## Haller Baking Company's Appeal.

258

Argued September 26, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Lee C. Beatty*, with him *William J. Askins, Jr.*, for appellant.—Appellant is within nonconforming use clause of zoning ordinance: Corr v. Phila., 212 Pa. 123; Corr v. Phila., 14 Pa. Dist. R. 35.

*H. Stewart Dunn*, Assistant City Solicitor, with him *Chas. A. Waldschmidt*, City Solicitor, and *Thomas M. Benner*, First Assistant City Solicitor, for appellee, cited: Hadacheck v. Sebastian, 239 U. S. 394.

OPINION BY MR. JUSTICE KEPHART, November 26, 1928:

This appeal calls for the interpretation of parts of the zoning ordinance of the City of Pittsburgh, as it was extended July 15, 1927, under authority of the Act of March 31, 1927, P. L. 98, to cover newly acquired territory. It is unnecessary to pass on the constitutionality of the clauses under consideration.

Appellant's land is situated in the 30th Ward of the City of Pittsburgh, formerly the Borough of Knoxville, it having been annexed January 1, 1927. A building was erected thereon in 1915. It was structurally divided into two parts, one for storage and the other for stabling horses, the stable part on the first floor containing twenty-five stalls.

This property was put, by ordinance, for use purposes in the 4th District, otherwise known as Class "A," Residence District, and the permitted uses include: family dwellings, two-family dwellings, double house, multiple-dwellings. The accessory uses permitted in the district are those customarily incident to the above uses; as a minor garage......; (c) a minor stable, etc."

A stable is defined by the ordinance as a building, structure or portion thereof which is used in whole or in part for the shelter or care of horses, cattle or other similar animals, either permanently or transiently. A "major stable" is defined as a stable with a capacity for more than four animals; and a "minor stable," permitted in this district, is a stable with a total capacity for not more than four animals. A "major stable" is not permitted in an "A" residence district, unless it comes within the following exception:

A "nonconforming use" is defined as the "use of a, building or land that does not agree with the regulations of the use district in which it is situated"; such use was permitted to continue under section 18 (a) of article V, which reads: "The lawful *use of land existing at the time of the adoption* of this ordinance, although

such use does not conform to the provisions hereof, may be continued, but, if such nonconforming use is discontinued, any future use of said land shall be in conformity with the provisions of this ordinance." The ordinance adopts the intent of section 3 of the Zoning Act of 1927, P. L. 98, which had in view the preservation of the value of existing buildings without unnecessarily disturbing their then known use.

Section 46 of the ordinance, relative to "occupancy permits," under the title of "Administration," required appellant to obtain a certificate of occupancy for the purpose of maintaining such nonconforming use. Appellant applied for and received such certificate September, 1927; on appeal, the board of adjustment revoked it and the common pleas court sustained the revocation for the reason that there was no real substantial use of the building as a stable since 1925.

Does appellant show a nonconforming use as contemplated by the ordinance? There can be no doubt of the intent and purpose of those who built and owned the building; it was for stabling horses. It was a structure designed for the shelter and care of horses and cattle, as expressed in the ordinance, and was so adapted when the zoning ordinance was extended to cover this borough. The purpose of its use could not be more plainly expressed than by the building itself. It had been used since 1915 by the Hilltop Ice Company for stabling horses, having been operated in connection with that company's retail ice business until 1924, when the ice company ceased its business. Since that time, the property has been held open and transiently used as a stable, the present appellant having purchased the premises August 18, 1927, as an adjunct to his bakery business.

In classifying stables, the ordinance indicates that a building's capacity for use is the determinative quality, not its actual use. Having a capacity for more than

four horses, it is classed as a major stable. The board of adjustment held it must not only have capacity, but when the zoning ordinance became effective be also actually used beyond the capacity of a minor stable, or by five or more horses continuously. This was an error which the court below promptly corrected. The learned judge of the court below, however, applied the doctrine of actual or substantial use at the date of the adoption of the ordinance, and found that, though the building was a major stable, partly in use at the time the ordinance was adopted, there was no real, substantial use nor regularity of use sufficient to characterize it as an existing use, as it sheltered in a few instances only a team or a horse.

The ordinance is not so restrictive, nor does it impose such qualifying language. The section of nonconforming uses employs the phrases, "the lawful use of land existing at the time of the adoption of this ordinance," "the lawful use of a building," etc. Neither the extent, quantity nor quality of the use is mentioned, but only that it must exist. Neither the act, the ordinance nor the law generally requires the court to speculate as to the number of acts or business transactions necessary to constitute an existing use. Under the decision of the court below, a grocer with his stock of goods in place, who makes only a few sales a week, would not be in the grocery business under the imposed limitation. The expression "existing use," though difficult to define, is, as a fact, not difficult of determination. As understood in the ordinance, "existing use" should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose, i. e., the conduct of a business. Ordinarily an existing use for business combines two factors: (a) construction or adaptability of a building or room for the purpose, and (b) employment of the building or room or land within the purpose. Any use, within a recognized

business purpose, would be an existing use. The court below, in determining whether there was an existing use, also failed to take into consideration two important elements: first, the intent of the owner in relation thereto, and, second, how far later words in the section, "if such use is discontinued," modify the "actual" or "substantial" use as held to be necessary by the court below.

It is manifest that section 18 of the ordinance, as well as the Act of Assembly on which the ordinance was grounded, intended to protect existing uses, even though not permitted under a district classification. The use for which the property is adapted need not be in actual operation at the time of the adoption of the ordinance, if the attending circumstances connected with the property bear out the conclusion that the owner intended to use the property for that purpose. Thus, where an owner temporarily fails to have a tenant in his storeroom the day such ordinance is passed, though his tenant has left but a short time before, and he is expecting or endeavoring to procure a new one, such circumstance would not deprive him, under the zoning ordinance, of the right to continue the use of the property for which it was adapted merely because at the date of the ordinance it is not in *actual use,* although it is in potential use. It had use before, intent to continue, and an effort made to effectuate the purpose. Where a property is built for or adapted to a particular use, the question of existing use is determined by ascertaining as near as possible the intention of the owner, in connection with the fact of a discontinuance or apparent abandonment of use; it is not to be determined on the basis of actual or substantial use on the date of the adoption of the ordinance.

An understanding of the phrase "if such use is discontinued," which is employed in the ordinance, is helpful, for the property must be in a discontinued state to enable the board to hold that it was not an existing use

when the ordinance was adopted. The word "discontinued" here, to have any legal effect, must be the equivalent of "abandonment," and, in Corr v. Phila., 212 Pa. 123, where an owner sought to enforce an abandonment of land against a railroad, we held, "An abandonment of land appropriated by a municipality for public use cannot be established by proof merely of a failure for the time to use it, or of a temporary use of it not inconsistent with an intention to use it for the purpose for which it was taken, or another public purpose." This stable had been used continuously until 1924. Since then the quantity diminished very materially, but it was still used for its original purpose, and it is appellant's purpose and effort to continue the use. This does not show an intention to abandon, nor would the fact that on the day of the adoption of the ordinance, or a number of days before no horses were in the building. A property right, such as is involved in this case, having attached, cannot be lost by that circumstance.

The burden of proving abandonment or discontinuance on the part of the owner rests, moreover, on the appellees. There were no restrictions on the use of the property prior to the extension of the zoning ordinance, and what was done prior to that time has nothing to do with the case except as it may evidence the use to which the property is or has been put, or to which it has been adapted, to show the owner's intention and the conduct of the business. The discontinuance defined by the zoning ordinance in section 18 does not begin to run until after the date of the adoption of the ordinance. If at that time there is an existing use, as here explained, it continues unless it is lost as therein stated.

We sustain the appeal, reverse the order of the court below, which affirms the order of the board of adjustment, and direct that the revocation of the certificate issued under section 46 be set aside and a new certificate issued to appellant if that has been destroyed; costs to be paid by the appellees.