# MAYOR AND CITY COUNCIL OF BALTIMORE *v.* JACOB S. SHAPIRO, ET AL.

[No. 60, October Term, 1946.]

*Decided February 12, 1947.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by *Simon E. Sobeloff, City Solicitor of Baltimore City*, and *Max R. Israelson, Assistant City Solicitor*, for the appellant.

Submitted on brief by *Harry Singerman* and *Hilary W. Gans* for the appellees.

HENDERSON, J., delivered the opinion of the Court.

The appeal in this case is from an order of the Baltimore City Court reversing the action of the Board of Zoning Appeals of Baltimore City and declaring that a permit issued by the Board to the appellees on July 2, 1941, for the sale of use cars, used parts and the dismantling of used cars at 2401-2475 Frederick Avenue, is "valid and subsisting." The appellees have filed a motion to dismiss the appeal, which presents the first question for consideration. The ground of the motion is that "it appears from the record that the Mayor and City Council is not prosecuting this appeal in its own behalf as representative of the people of Baltimore City, but has simply consented to permit the appeal to be prose-

cuted in its name for the benefit of and at the expense of certain private parties."

It is stipulated that the Mayor and City Council, through the City Solicitor, filed an answer to the petition for appeal filed in the Baltimore City Court, but that none of the numerous protestants or petitioners before the Board intervened in the proceeding at that time. After the decision of the court was announced, the attorney for some of the protestants applied for permission to intervene, but the Court refused permission on the ground that the request came too late. It is also stipulated that the City Solicitor was requested, by resolution of the City Council, to appeal the court's decision in this case, and did so, with the written approval of the Mayor, acting under Sections 82 and 86 of the Baltimore City Charter (1938 Ed.). It appears from the record, however, that he advised the Council that, although "the private parties who wish the City to appeal have offered to bear the expense of such proceedings," he thought the policy of his office should be "not to appeal unless the record in a particular case presents a substantial question of law or practice, or the City's interests are otherwise directly affected," or unless a case "involves an important question of interpretation of the law or a point of practice likely to recur."

The enabling Act, Code, Art. 66B, Sec. 7, provides that "any person or persons jointly or severally aggrieved by any decision of the Board of Zoning Appeals, or any taxpayer or any officer, department, board or bureau of the municipality, may present to a court of record a petition" for appeal. There is a provision for further appeal to this Court. Paragraph 35 of the Zoning Ordinance repeats this language and designates the Baltimore City Court as the court of record. Paragraph 35 (A) provides that "it shall be the duty of the Board of Zoning Appeals to notify the City Solicitor promptly of the filing of every petition of appeal." Obviously, the notice is to enable the City Solicitor to defend the Board's action, if he so desires.

In the case of *Board of Zoning Appeals v. McKinney*, 174 Md. 551, 199 A. 540, 543, 117 A. L. R. 207, this Court held that the Board itself had no standing to appeal, since it was merely "an administrative agency of the City of Baltimore exercising quasi judicial and legislative functions" and had "no interest, personal or official, in the matters which came before it other than to decide them according to law and the proved fact." But the City's right to appeal was clearly recognized, and there was no suggestion that this Court should inquire into the City's motives. Whether a particular case should be appealed in the first instance, or to this Court, must rest in the sound discretion of the City authorities. In the case at bar the City has raised questions of construction and procedure that transcend the limits of the particular controversy, and we cannot say that these questions are unimportant, or that the City has no legitimate interest in the subject matter or outcome of the litigation, even if such inquiry were open under the unqualified provisions of the statute. Nor do we regard the fact that private persons, denied the right to intervene for the purpose of appeal, have agreed to reimburse the City for costs, as controlling. The motion to dismiss must be overruled.

The record discloses that the appellee Jacob S. Shapiro and Rose Shapiro, his wife, purchased the property known as 2401-2475 Frederick Avenue on April 28, 1941, intending to establish at that location a branch of the partnership known as Gittings Auto Service, composed of Jacob S. Shapiro and Joseph W. Shapiro, his son, to be operated by the appellee, Joseph W. Shapiro. The property is irregular in shape and comprises about 14½ acres. It is unimproved, except for four buildings fronting on Frederick Avenue, and at the time of the purchase the unimproved portion contained a large number of deep holes or pits and was used as a dumping ground. It was, and is, located in a Second Commercial Use District.

On June 18, 1941, Jacob Shapiro made application to the Buildings Engineer, on behalf of the partnership,

for a permit to use the "vacant lot for the sale of used cars, used parts, and for the dismantling of used cars." The Buildings Engineer noted that such a use would be "permitted unless a 'junk use' is involved; if a 'junk use' is intended it would be permitted if a use of the same classification now exists on the premises." Evidently he thought a "junk use" was involved, for he disproved the application "under paragraph 6" of the Zoning Ordinance. The "junk use" referred to is found in Paragraph 6 (35) : "junk (scrap paper, metals, bottles, rags, rubber) yard or shop for purchase, sale, handling, baling or storage of these." On appeal, the Board of Zoning Appeals found that "the old Wilkens Hair Factory * * * was an established industry for many years at this location," and that "since the hair-drying process has ceased, the *buildings* have continued to be used for industrial purposes. The Board approves the application." (Italics supplied.) It was not shown that the vacant portion of the lot, for which the permit was sought, had ever been used for any purposes except those of a dumping ground. On the following day, July 2, 1941, the permit was issued.

On December 12, 1941, the Zoning Ordinance was amended by adding subparagraph (84) to paragraph 6, so as to exclude from a Second Commercial Use District any "automobile dismantling, salvaging or wrecking yard, and yard for the dismantling and salvaging of automobile parts."

On March 19, 1946, the Zoning Enforcement Officer, with the express approval of the Buildings Engineer, notified Jacob S. Shapiro that "since the privilege granted [under the permit of July 2nd, 1941] has not been exercised, you are advised that the privilege and all rights granted are null and void." In taking this action he relied upon paragraph 39 of the Ordinance, which provides: "Whenever an application for a permit is approved under the provisions of this Ordinance, either by the Buildings Engineer or the Board of Zoning Appeals, * * * the permit shall be obtained and the privilege granted thereunder shall be exercised by the grantee

therein named within twelve months from the date of the final action which made the permit valid, and if not exercised by the grantee therein named within that time, the privilege and all rights granted shall become null and void and of no effect * * *." He also relied upon paragraphs 31 and 37 of the Ordinance for his authority to revoke the permit and enforce conformity.

On appeal to the Board of Zoning Appeals, a public hearing was held on April 16, 1946. Jacob Shapiro testified that the four buildings on the front of the lot were occupied by Overnight Transportation Company, Auto Parts Company, Ives, a manufacturer or brush handles, Enoch Transportation Company, and Commercial Central Sales; that the rest of the lot was still vacant and unimproved, although he had filled in some of the holes, and had plans for another building to be occupied by Gittings Auto Service, construction of which had been prevented by the war. He testified that "we started dismantling in 1941, in September and October," but discontinued this because of the war and because his son went into the Service on July 21, 1942 (he was not discharged until April 16 1946) and there was a labor shortage. He stated that he had "recently" fenced in the property to prevent dumping of garbage on the lot. He denied any intention to permanently abandon the use of the lot for dismantling cars. He produced trader's licenses for the years 1941-1945, inclusive, in the name of Gittings Auto Service, Joseph W. Shapiro, proprietor, for the location 2401-2475 Frederick Avenue. The first of these was dated November 4, 1941. In each, the average stock in trade was valued at $1,000. He did not testify that anything was ever sold at the location; on the contrary, he testified that the business was still conducted, as it had been prior to 1941, at the principal office of the firm on Washington Boulevard and Sulphur Spring Road.

John Philip Grace, the manager of the firm, testified that two cars were dismantled on the lot on July 23, 1941, and three cars on August 5, 1941. "We towed the cars there and they sat there a while, I don't know why, but we went over later and dismantled; we hauled the parts

to Washington Boulevard and the [remaining] parts to United Metal. * * * We didn't dismantle right away, they sat there, children got in them and broke the glass and stole tires. I sent Mr. Nowakowski there and said 'Dismantle the cars until we get this straightened out'." He further testified that they did not dismantle any other cars on the lot until October 5, 1945, when one was dismantled, and three more subsequently; that the reason they stopped in 1941 was that they "couldn't possibly run the two places" because of the war.

Joseph F. Nowakowski testified that he towed some cars to the lot in July, 1941, and dismantled them, taking the "good" parts to the firm's place of business, and the scrap "to the United." James A. Shorter, another employee, testified he towed four cars to the lot in October, 1941; "they sat there a week and my boss said, 'take them up to Washington Boulevard' and I did that a week after. * * * they had not been touched."

Corinto Matucci testified that he was in the used car business at 2539 Frederick Avenue, and that he dismantled cars for Mr. Shapiro every year from 1941 to 1945 "in back of 2539 Frederick Avenue * * * the property I sold to Mr. Shapiro." The relevancy of this testimony is not apparent.

The evidence presented by the protestants, through seven witnesses resident in the neighborhood, was to the effect that they never saw a car dismantled on the premises at any time from 1940 to date, although they observed the lot daily. One of the witnesses testified: "It was just a private lot, filling in, and no place to put a car." A petition of protest was also filed bearing some 1,800 signatures.

Upon this evidence the Board passed a resolution that "the preponderance of evidence shows that the permit has not been exercised" and sustained the action of the Buildings Engineer in revoking the permit.

On appeal to the Baltimore City Court, it is stipulated that counsel for the permittees stated that "he was prepared to offer some additional testimony regarding the use of the property, the amount of work done

by the Shapiros on the tract of land preparing it for use as an automobile dismantling yard, the amount of money expended therefor, and the use to which the property had been put." The Court declined to hear additional testimony, and decided the case on the record made before the Board. On June 17, 1946, the Court filed an opinion in which it found that the permittees exercised the privilege granted in 1941, and that there was no abandonment, and reversed the Board's action. The City appealed here.

We find no reversible error in the Court's ruling upon the proffer of additional testimony. The testimony taken before the Board fully and completely developed the use made of the premises by the appellees, and contradictory testimony would not be entitled to much credence. Additional testimony on this point, or as to the amount of grading, and the cost thereof, could hardly affect the result. Even if we assume, for the purposes of this case, that the Court, on review, has not only the right but the duty to hear additional evidence if "it shall appear to the court that testimony is necessary for the proper disposition of the matter" (Code, Art. 66B, Sec. 7), some latitude must be allowed to the trial Judge in passing upon a proffer in a particular case. The Board is the body to which decision is "principally committed," and it is incumbent upon a party to produce evidence before that body before seeking a review of the Board's action. Compare *Hathcock v. Loftin*, 179 Md. 676, 22 A. 2d 479.

In the case at bar the question at issue before the Board, and before the court on appeal, related to the exercise of the permit within the time prescribed by paragraph 39 of the Ordinance, *i.e.*, within twelve months from the date of issuance, July 2, 1941. Upon the record, we think this was not the true issue. We find no evidence that the vacant portion of the lot, as distinguished from the buildings, was ever used for industrial purposes, conforming or non-confirming, prior to July, 1941. It was simply a dumping ground, scarcely usable at all in its then condition. On the other hand, unless

the proposed use was a "junk" use under paragraph 6 (35) (and the Board made no finding on this point), no permit was necessary. The amendment of December, 1941, for the first time made a "dismantling" use non-conforming and, by implication, recognized that a use of that character was conforming under the ordinance as it stood prior to the amendment.

The real question, therefore, would appear to be whether such a use was "existing" at the time of the amendment. If it was, then the amendment did not affect it. Paragraph 11 of the Ordinance provides that "nothing contained in this ordinance shall be construed to prevent the continuance of any use which now legally exists." *Moylan, Inc., v. Board of School Com'rs,* 180 Md. 316, 24 A. 2d 297. However, there is no evidence to show that any use was made of the lot between August 5, 1941, and August 5, 1945, so that it is perhaps immaterial whether the issue is treated as concerning the exercise of the permit, or the existence of the use, in 1941. In either event the answer must depend upon analysis of the evidence presented. If a non-conforming use had been established, as of December, 1941, then we would have to consider the further question as to whether it was subsequently abandoned. But the primary question is whether the business of the appellees was established or existing at the location in question in 1941.

In *Roach v. Board of Zoning Appeals,* 175 Md. 1, 199 A. 812, the question was whether Lipsitz, a former owner, had operated a planing mill on the property prior to the Zoning Ordinance. If so, then it was conceded that an ice factory might be authorized, as falling in the same classification. But if the operation was that of a lumber yard, then a change to a lower classification was not permissible. This Court said (175 Md. at page 5, 199 A. at page 814) : "on the whole evidence the City Court could find that Lipsitz had conducted a planing mill * * *. With legally sufficient evidence that Lipsitz was operating a planing mill and no substantial evidence to the contrary, the presumption, therefore,

is in favor of the correctness of the decision of the City
Court." The Court's order affirming the Board was sus-
tained.

In *Chayt v. Board of Zoning Appeals,* 177 Md. 426,
434, 9 A. 2d 747, 750, the question was whether adja-
cent, vacant land, held for expansion of the non-con-
forming business and included in a comprehensive plan
for expansion sketched out before 1931, could be re-
garded as in use. It was held that the use was not
existing. " 'As understood in the ordinance, "existing
use" should mean the utilization of the premises so that
they may be known in the neighborhood as being em-
ployed for a given purpose; *i.e.,* the conduct of a business.
Ordinarily an existing use for business combines two
factors: (a) Construction or adaptability of a building
or room for the purpose, and (b) employment of the
building or room or land within the purpose.' " This
passage was quoted from *Appeal of Haller Baking Co.,*
295 Pa. 257, 261, 145 A. 77, 79. In that case it was
held that use of a large stable, in existence when an
ordinance was passed prohibiting "major" stables (for
more than five horses), was not affected, although at
the time the prohibition took effect the stable was in
actual use for the stabling of only two horses. The deci-
sion turned, however, on the fact that the prior use as
a "major" stable, for which the property was specially
adapted, was conceded, and the Court held that the more
limited use was temporary and did not constitute an
abandonment. The Haller case was cited by this Court
in *Landy v. Board of Zoning Appeals,* 173 Md. 460, 469,
196 A. 293, 297, 14 A. L. R. 984, for the proposition
that "cessation or discontinuance of a non-conforming
use without the substitution of another use, or without
evidence of an intention to abandon the non-conforming
use, will not prevent its resumption." Compare *Beyer v.
Mayor and City Council of Baltimore,* 182 Md. 444, 34
A. 2d 765.

In *Knox v. Mayor and City Council of Baltimore,* 180
Md. 88, 23 A. 2d 15, despite testimony that a vacant lot
had been used for the storage of building materials and

trucks, to establish a non-conforming use, this Court affirmed the finding of the trial court and Board that the only use consisted of dumping cinders, old bricks and mortar, to fill in the lot, and held that a business use was not established.

The evidence presented in the case at bar shows an intention on the part of the appellees in 1941 to establish, on a vacant lot, a branch for the sale of used cars, parts and dismantling of used cars. They contemplated the erection of a building, but this did not advance beyond the planning stage. No improvements were made, except filling in some of the holes. No sales or purchases were made there, hence the obtention of a Trader's license in November is without significance as to actual use. On two days in 1941, five cars were towed to the lot, and dismantled a few weeks later. The parts and scrap were removed. In October, four cars were towed to the lot, and then towed to the firm's place of business. As against this evidence, residents testified that no cars were ever dismantled on the lot. While this negative evidence is not entitled to much weight (*Heath v. Mayor and City Council of Baltimore*, 187 Md. 296, 49 A. 2d 799, 803), it shows that the activity failed to meet the test of being "known in the neighborhood." Accepting the evidence produced by the appellees at its face value, the activity appears to have been merely preliminary or casual. Neither the existence of a plan (*Chayt v. Board of Zoning Appeals, supra*) nor the purchase of property and the expenditure of money for grading (*Knox v. Mayor and City Council of Baltimore, supra; Board of Com'rs of Anne Arundel County v. Snyder*, 186 Md. 342, 46 A. 2d 689, 692) are sufficient to show that the business was established or existing. The mere issuance of a permit, where the permittee has not commenced the work or incurred substantial expense on the faith of it, does not create a vested right, or estop the municipal authorities from revoking it. *Board of Com'rs of Anne Arundel County v. Snyder, supra; Geneva Inv. Co. v. St. Louis*, 8 Cir., 87 F. 2d 83, *certiorari* denied 301 U. S. 692, 57 S. Ct. 795, 81 L. Ed.

1348; *Brett v. Building Commissioner of Brookline,* 250 Mass. 73, 145 N. E. 269; and see Note, 138 A. L. R. 500, and cases there cited. After the adoption of the amendment, the issuance of a new permit, for a non-conforming use, would be nugatory and void. *Lipsitz v. Parr,* 164 Md. 222, 164 A. 743.

We hold that dismantling cars on two occasions, on a vacant lot wholly unadapted for the conduct of a business, does not establish an existing use within the meaning of the Ordinance, and that the finding of the Board was supported by substantial evidence. *Heath v. Mayor and City Council of Baltimore, supra;* compare *Heaps v. Cobb,* 185 Md. 374, 45 A. 2d 73, 76.

In view of our conclusion that the use was not established or existing in 1941, it is unnecessary to consider the question as to whether it was subsequently abandoned. The order of the trial court is reversed, and the order of the Board of Zoning Appeals is affirmed.

*Motion to dismiss appeal denied; order reversed, with costs.*