# GERSON DORMAN *v.* MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

[No. 68, October Term, 1946.]

*Decided March 13, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Joseph W. Spector*, with whom was *Charles Jackson* on the brief, for the appellant.

*Hamilton O'Dunne, Assistant City Solicitor of Baltimore*, with whom was *Simon E. Sobeloff, City Solicitor of Baltimore*, on the brief, for the appellee, Mayor and City Council of Baltimore.

*Frederick J. Singley, Jr.*, with whom were *Warren Harvey Small, Frederick J. Singley* and *Hinkley & Singley* on the brief, for the appellees, Jack R. and Rae Heneson.

MARKELL, J., delivered the opinion of the Court.

This an appeal from an order affirming the decision of the Board of Zoning Appeals, which reversed a decision of the Buildings Engineer disallowing an application "to permit the continued use of the premises for a junk shop at 816-818-820 E. Lexington Street." The question presented is whether this non-conforming use in a second commercial use district had been abandoned by the former owners of the property—or changed by them to a use of a higher classification, *viz.*, a warehouse. If it had not, then it would seem that no "permit" or "certificate of occupancy" (Par. 36, Zoning Ordinance, No. 1247, approved March 30, 1931) would be required to "continue" the non-conforming use (Par. 11). If, however, the non-conforming use had been abandoned, then the "permit" or "certificate of occupancy" would be unlawful and approval of it should be reversed. A similar question of abandonment was raised and decided on application for a "certificate of occupancy" in *Landay v. Board of Zoning Appeals*, 173 Md. 460, 462, 463, 196 A. 293, 295, 114 A. L. R. 984.

Appellant is the owner of the adjoining property Nos. 810, 812-814, which he bought in September, 1945, and has occupied and used since January, 1946, in the operation of a wholesale electric supplies business. The building he bought was an old building, which he remodeled completely. He says he examined the neighborhood at the time he bought and saw no evidence of the operation of a junk shop at the premises now in question (Nos. 816-820).

These premises were owned by William Sachs from 1903 until his death in April, 1944. From 1903 until 1920 he alone, and from 1920 until 1939 he and his son, Samuel, conducted a junk shop on the premises. In 1939, after a disagreement between father and son, the son left the business and never returned; later he became employed in a war plant until August, 1945. After he left, the father, who was advanced in years and not in robust health, retired from the business and rented the premises for a junk business. The premises consist of an irregular shaped lot, fronting 38 feet on Lexington Street, with a depth of 221 feet, with access to the rear through an alley. There is a warehouse fronting on Lexington Street, with a depth of 40 feet. In the warehouse was a platform scale. In the rear yard were several sheds, one of which contained metal-cutting power shears. A small brick building contained hand scales. Trucks were also kept in the yard.

The present owner (Heneson, appellee) proffered evidence (which the court excluded) that in 1941 Wyatt Sklar rented the premises from Sachs, by a lease which terminated January 31, 1942, and operated a junk business there, and that after a serious fire, on October 19, 1942, which damaged the premises, Sachs approached Sklar (who had then established his junk business elsewhere), expressed a desire to have a junk business on the premises and offered to restore the premises and lease them to Sklar for this purpose, which offer Sklar was "reluctantly compelled" to decline.

There was also proffered, but excluded, a lease from Sachs to Jacob Schenk, dated October 31, 1941, of the premises, "including the truck scale, platform scale and alligator shear with electric motor and equipment", all "a part of and attached to" the premises, for three years beginning February 1, 1942, at $1800 a year, for the purpose of "a retail and wholesale junk business" and no other purpose. The lease contained a provision that if the property should be destroyed or rendered untenantable by fire the tenancy should be terminated, but if the damage should not render the premises untenantable,

they should be restored by the landlord and the rent should "abate proportionately until restored." On October 19, 1942, a serious fire damaged the premises. Schenk's tenancy was terminated, and litigation ensued.

Appellant proffered, but the court excluded, testimony of Schenk that he asked Sachs to repair the premises but Sachs refused to do so, because after the fire Sachs refused to permit occupancy of the premises for the conduct of a junk business, and that upon removal from the premises Schenk removed therefrom all junk and other materials used in the operation of the junk business, leaving the premises "broom clean." After the fire the building was not wired for electricity until 1946, and the power shears therefore presumably were not used or usable.

There was also proffered, but excluded, a lease from Sachs to William Glick, dated April 30, 1943, of the premises "144 feet back from Lexington Street", for six months beginning May 1, 1943, at $100 a month, for the purpose of "storage for trucks, trailers and theatrical properties" and no other purpose. This tenancy actually continued from month to month until 1946, after sale of the premises by Samuel Sachs to Heneson.

Samuel was his father's executor. Samuel and his sister were the only children—or the only devisees. In 1944 the premises were conveyed by Samuel and his sister, through an intermediary, to Samuel. In 1944 Samuel, as executor, reported sale of the "iron cutting shear and motor" for $100, two trucks for $50 each, 22 bales of "wool rags" for $100, and "miscellaneous iron" for $25. In his individual capacity he reacquired these articles, and they were not removed from the premises. Later he sold the rags, which were "vulnerable to moths" and the two trucks "because of their old age". After he left the war plant in August, 1945, he says he "considered" going back into the building, but "because of labor conditions and economic conditions generally" he did not do so.

There was offered or proffered opposing evidence: On the one hand, that William Sachs after retiring from

the business said he was never going back into it, in January, 1942 (for reasons not clear) complained to the Fire Department about the use of the premises for a junk business, and after the fire refused to rent the premises as a junk shop and said the premises would never be used for a junk business again, that after the fire there was no junk on the premises (but considerable "rubbish" in a corner of the yard) and no junk business conducted there, and after the father's death the son had sold the "main scale" that was used for operating the junk business in the building, and there was no platform scale there. On the other hand, that Sachs had expected his son to come back with him after the war, had after the fire asked his real estate broker to procure a tenant who was in the junk business, and when the broker was unable to procure such a tenant, accepted Glick as a "temporary" tenant, and that the broker saw "a considerable quantity of scrap materials in the back" of the premises and Sachs "apparently was storing salvage materials and still operating in a small way this junk business." Before the Board the broker testified that Sachs wanted him "to rent the property on a month-to-month basis for whatever purpose I could rent it," because of his hope of his son's return.

After the fire and the lease to Glick, Sachs apparently had some unsold junk or "rubbish" in the yard, and perhaps in the building, and may have made occasional sales of his unsold junk, but we find no reason to believe that he conducted a junk business or made a "business use" of the yard or the building. Such "storage" may or may not have constituted a nuisance or a prohibited use under Paragraph 6(d) 35 of the Zoning Ordinance: "Junk (scrap paper, metals, bottles, rags, rubber) yard or shop for purchase, sale, handling, baling, or storage of these."

This court has in a number of cases passed upon questions as to existence, continuance or abandonment of a non-conforming use. An existing business use ordinarily combines two factors, (a) construction or adaptability of the property for the purpose and (b) use of

it within the purpose. *Chayt v. Zoning Appeals Board,* 177 Md. 426, 434, 9 A. 2d 747; *Mayor and City Council of Baltimore v. Shapiro,* 187 Md. 623, 51 A. 2d 273. The existence of a plan—or a mere "hope of reconciliation" between father and son—is not an existing business use. "* * * it would be unlikely that a zoning ordinance would make provision for so unsubstantial a thing as a plan in mind. * * * The law would not be concerned to regulate a change of intention." *Beyer v. Mayor and City Council of Baltimore,* 182 Md. 444, 453, 34 A. 2d 765, 768, quoting *Chayt v. Zoning Appeals Board, supra.*

The question of abandonment—or change of use—must be similarly approached. Abandonment depends upon concurrence of two factors, (a) an intention to abandon and (b) some overt act, or some failure to act, which carries the implication that the owner does not claim or retain any interest in the subject matter. Time is not an essential element, but may be evidence of intention to abandon and may be considered in connection with acts manifesting such an intention. *Landay v. Board of Zoning Appeals, supra,* 173 Md. 469, 470, 196 A. 293, 114 A. L. R. 984; *Beyer v. Mayor and City Council of Baltimore, supra.* The nature of the subject matter must be given due consideration. The right under Paragraph 11 to "continue" a non-conforming use is not a perpetual easement to make a use of one's property detrimental to his neighbors and forbidden to them. It is not like the right of a patentee to exclude the world from the use of an invention without any use of the invention by the patentee himself. *Paper Bag Patent Case,* 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122. It is only "to avoid injustice that zoning ordinances generally except existing non-conforming uses. * * * The public effort is not to extend [non-conforming uses], but rather to permit to exist as long as necessary, and then to require conformity for the future. * * * The mere cessation of the use for a reasonable period does not of itself work an abandonment, but once the abandonment is clearly indicated by intention and action, or failure of action for a sufficient period of time, then the owner

has lost his right to the non-conforming use, and must use his property only in conformity with the uses allowed to other properties in the neighborhood. Were the law otherwise an owner could keep his property in a non-conforming class forever, which would be entirely contrary to the policy underlying zoning [ordinances]." *Beyer v. Mayor and City Council of Baltimore, supra,* 182 Md. 453, 454, 34 A. 2d 769.

In *Landay v. Board of Zoning Appeals, supra,* certain properties, rented for junk shops, became vacant at the lowest point of the depression and remained vacant for about three years. During the vacancy they were only used occasionally for storage of some furniture. It was held that the storage of furniture was only a casual use and the mere cessation of business did not constitute an abandonment. The opinion in the Landay case, and cases there cited, indicate that on the question of intent as to existence, continuance or abandonment of a non-conforming use the outward and visible signs of intent usually should be conclusive. "* * * 'existing use' should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose; *i.e.,* the conduct of a business." Appeal of *Haller Baking Co.,* 295 Pa. 257, 145 A. 77, quoted in 173 Md. 469, 196 A. 293. In *Darien v. Webb,* 115 Conn. 581, 162 A. 690, 691, property formerly used as a restaurant "was rented and used as a dwelling, once for two months, again for three months; it was rented and used for the storage of building material, it was vacant for a time, and for a time the owner permitted a former tenant to store her furniture there. It was held that these several uses broke the continuance of the non-conforming use" as a restaurant. 173 Md. 467, 196 A. 293.

The instant case, we think, should turn primarily on the acts of the former owners and not on alleged statements (except in so far as words took the form of action) of the owner who died a year or two before the property was sold or appellant acquired his property. If appellant can support some of his proffers of evidence—and

some of his opponent's—it would appear that after the fire in 1942 Sachs refused to restore the property pursuant to the Schenk lease, refused to rent it for a junk business, and later rented part of it as a warehouse for six months, the tenancy actually continued for three years, neither Sachs nor his son ever made any other business use of the rented or unrented part, and at least one of the scales was sold and removed and the shears were left, by the fire, in an unusable condition. If such are the facts, and are not materially qualified, by other facts, we think the non-conforming use was abandoned— or "changed to a use of a higher classification," *viz.*, a warehouse. Par. 11. How far such supposed facts might be negatived or qualified without changing the result, we do not undertake to say at this time.

Besides specific proffers, appellee Heneson made a general proffer of testimony in opposition to testimony proffered by appellant but excluded by the court. In *Mayor and City Council of Baltimore v. Shapiro, supra*, it was held that certain additional testimony proffered by the appellee could hardly affect the result, that some latitude must be allowed to the trial judge in passing upon a proffer in a particular case, and the order (reversing the Board) was reversed on the evidence before the Board, without remand for additional testimony before the court. In the instant case the written leases doubtless may be regarded as undisputed facts. As to other facts, however, we cannot take proffers as facts, still less determine the weight of opposing proffers. We must, therefore, decide whether there was reversible error in rejecting any of appellant's proffers. We have already indicated that some of the evidence proffered would have been material or pertinent.

In support of the exclusion of proffered evidence various reasons are given by the city and the lower court. The enabling act provides that any person "aggrieved by any decision of the Board * * * may present to a court of record a petition * * * setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality." The return

of the Board "shall concisely set forth such * * * facts as may be pertinent and material to show the grounds of the decision appealed from * * *. If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a commissioner to take such evidence as it may direct and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review". Art. 66B, Sec. 7, Cf. *Zoning Ordinance,* Par. 35.

The city contends that the only "grounds of illegality" reviewable are whether the Board's action was arbitrary or unsupported by substantial evidence, and that "testimony is necessary for the proper disposition of the matter" only (1) to show arbitrary action in the conduct of the hearing before the Board or (2) to support the Board's decision by substantial evidence. For the first purpose the provision for testimony would be unnecessary, as the record before the Board should show what the Board's action was and no such provision would be needed to authorize the court to ascertain and correct any material error or omission in the record. Limitation of testimony to the second purpose would be contrary to fundamental law and justice. If administrative action unsupported by substantial evidence could be bolstered on appeal by evidence limited to furnishing such support, then arbitrary administrative action would be aggravated by arbitrary judicial action and the final result would rest on no decision at all as to the weight of evidence, by either the administrative body or the court. The only valid ground for excluding judicial review of the weight, as well as the sufficiency, of the evidence before an administrative body is that the same evidence, which the court finds substantial and legally sufficient, has already been weighed by "a tribunal appointed by law and informed by experience." *Illinois*

*Central Railroad v. Interstate Commerce Commission,* 206 U. S. 441, 444, 454, 27 S. Ct. 700, 704, 51 L. Ed. 1128.

The lower court ruled that it would consider the case only upon the record made before the Board, excluding appellant's proffers of testimony of witnesses who were not present at the hearing before the Board but "were discovered as a result of a search subsequent to the hearing before the Board." Later this ruling was modified to admit testimony which the Board refused to hear and also (for reasons not clear to us) testimony of Sachs' broker substantially different from his testimony before the Board. We think this action was too restrictive an exercise of whatever discretion the court may have under the evidence provision of Section 7 of the Act.

Beyond the minimum inherent judicial power of review of administrative action, the extent of judicial review in particular classes of cases depends upon the legislature. Such review may extend to trial *de novo,* on the law and the facts, as in workmen's compensation cases. Even in such cases the administrative agency is the body to which decision is "principally committed," and it is incumbent upon a party to produce evidence before that body before seeking review of its action. *Hathcock v. Loftin,* 179 Md. 676, 22 A. 2d 479; *Mayor and City Council of Baltimore v. Shapiro, supra.* In the instant case we see no disposition on appellant's part to by-pass the Board or to withhold evidence from it. Appellant, a newcomer in the neighborhood, asserts a general rule of the Zoning Ordinance against an alleged exception based on acts done and statements made years ago, principally by a person now deceased. Without fault appellant might fail to discover, before the Board's hearing, testimony "necessary for the proper disposition of the matter."

The legislature may restrict judicial review of administrative action to evidence before the administrative body—at least when no question as to newly discovered evidence or surprise is involved. *State of Washington ex rel. Oregon R. & Nav. Co. v. Fairchild,* 224 U. S. 510,

527, 528, 32 S. Ct. 535, 56 L. Ed. 863. Under the Public Service Commission Law this result is attained by providing for remand to the commission of any additional evidence and action thereon by the commission before action by the court. Art. 23, Sec. 416. *Cf. Anne Arundel Liquor Laws,* 1943 Supplement. Art. 2B, Sec. 63B. The Zoning Act does not require (if it permits) such a remand, but provides that the additional evidence "shall constitute a part of the proceedings upon which the determination of the court shall be made." The "general" liquor laws contain express restrictions on additional evidence on appeals, but permit additional evidence "if the interests of justice otherwise require." General Law, Art. 2B, Sec. 63, 1943 Supplement.

In *Heath v. Mayor and City Council of Baltimore,* 187 Md. 296, 49 A. 2d 799, this court found additional evidence as to procedure to be unsubstantial, sustained the Board of Zoning Appeals as to procedure, stated and applied to the record before the Board the minimum measure of judicial review and by that measure found the Board's action on the merits unsupported by evidence and illegal.

The original Zoning Ordinance of 1923 provided for trial *de novo* on appeal. *State ex rel. City of Baltimore v. Rutherford,* 145 Md. 363, 366, 125 A. 725. The appeal provisions of the Ordinance of 1925 "seem practically to amount to authorizing a trial *de novo." Tighe v. Osborne,* 150 Md. 452, 465, 133 A. 465, 46 A. L. R. 80. Under the present Zoning Act of 1927 additional evidence as to abandonment has been taken on appeal and has been considered by this court as showing abandonment. *Beyer v. Mayor and City Council of Baltimore supra.* We think the language of Section 7 and the opinions of this court do not support the lower court's restrictive construction of the Act or exercise of discretion in the instant case.

*Order reversed, with costs; cause remanded for further proceedings.*