**KING RESOURCES COMPANY**

v.

**ENVIRONMENTAL IMPROVEMENT COMMISSION et al.**

Supreme Judicial Court of Maine.

Nov. 19, 1970.

**864**

Robert D. Schwarz, Frederick A. Johnson, Portland, Albert L. Bernier, Waterville, for plaintiff.

John M. R. Paterson, E. Stephen Murray, Asst. Attys. Gen., Augusta, for defendant Environmental Improvement Comm.

Harold C. Pachios, Edward T. Richardson, Jr., Portland, amicus curiae.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

DUFRESNE, Chief Justice.

The plaintiff corporation, King Resources Company, on February 3, 1969 purchased from the General Services Administration for the sum of $203,000 the real estate complex located on Long Island in Casco Bay, with all the facilities existing thereon and known in the area as the United States Naval Fuel Annex. The property had been offered for bid to the general public and the land and facilities were fully described in the advertisement. Plaintiff's purchase was for the purpose of operating a commercial oil terminal after certain renovations, modifications and additions had been made.

The land area consisted of 181 acres with 15 underground bomb-proof fuel storage tanks having a total capacity of 26,-188,000 gallons (or 623,523 barrels); these tanks were connected to underground transfer pipelines and to an existing pier. In addition thereto, there were 2 generator plants of steel and concrete construction, a fresh water tank of 450,000 gallon capacity, several buildings such as a water tank building, a motor generator house, a boat repair shop, a maintenance building, an administration building, an office building, a clarifier house, a garage, a fire station, a complete fresh water system connected to the Portland city water supply system with underground water line from Great Diamond Island, fire hydrants and pumping stations, roads and ways, steam heat lines, electrical lines and poles, and 6,400 feet of

security fencing. The pier was about 600 feet long with 3 lines for fuel oil transfer.

In the year 1969 shortly after the purchase of the naval fuel annex Plaintiff bought a contiguous parcel of approximately 175 acres of Long Island land zoned R–3 under the zoning ordinance of the City of Portland. Long Island is within the territorial jurisdiction of Portland. Later in September, 1969 Plaintiff purchased the former Fort McKinley located on adjacent Great Diamond Island for an amount in excess of $200,000 as a protection of Plaintiff's investment on Long Island.

The tax assessors of the City of Portland for tax purposes placed a value of $477,000 on Plaintiff's Long Island property, assuming that as of April 1, 1969 the Plaintiff could not use the facilities as an oil terminal storage depot until the zoning ordinance of the City of Portland was amended from Residential–3 to Industrial–3. The zone change was legally made. It became effective June 16, 1969. Under the Industrial–3 zone, the operation of an oil terminal and storage facility is permitted.

Repairs were made amounting to some $157,500. Cleaning the storage tanks cost another $117,000. Equipment necessary for the operation of the facility was bought aggregating in price nearly $60,000; this equipment included a cabin cruiser and trucks among other things. Water surveys accounted for another disbursement of some $98,000. Legal fees connected with the project exacted another $90,000. All these expenses were incurred prior to January 1, 1970, the cut-off date which the Legislature adopted when it amended 38 M.R.S.A., chapter 3, subchapter 1, article 6, by ·adding section 488 which reads as follows:

"§ 488. *Applicability*

This subchapter shall not apply *to any development in existence* or in possession of applicable state or local licenses to operate *or under construction on January 1, 1970* or to any development the construction and operation of which has been specifically authorized by the Legislature prior to the effective date hereof, or to public service corporation transmission lines." [Emphasis ours.] P.L. 1969, c. 571 (Special Session,—1970.)

The Site Location of Development law (chapter 571—P.L.1969), together with chapter 572—the Coastal Conveyance of Petroleum law, otherwise known as the Oil Discharge Prevention and Pollution Control law—were enacted at the same special session and became effective on May 9, 1970.

In its renovation program, Plaintiff contemplated removal of the existing pier for the construction of a new modern steel and concrete dock at the site of the old one. During February or March, 1970 the old pier was dismantled except for 160 feet thereof. At the public hearing held on April 16, 1970 before the Army Corps of Engineers on Plaintiff's application for permission to construct the new dock, the Environmental Improvement Commission, hereinafter termed the Commission, filed a letter of protest requesting that the granting of the permit be deferred "until the Environmental Improvement Commission has had the opportunity to review the company's plans, issue necessary waste discharge licenses and certify to the Corps of Engineers that this development will not adversely affect the water quality of Casco Bay." No permit appears to have been issued following this hearing and the Commission's protest.

Prior to the effective date of the Site Location law, the issue of the Plaintiff's exemption from the Act was the topic of discussion between Plaintiff's counsel and the Commission. Members of the Attorney General's staff were being consulted. When Plaintiff's counsel complained to Commission Chairman Koons that the Plaintiff was suffering substantial losses daily due to the long delay of the Commission in taking a position, Mr. Koons suggested, and this is stipulated, "that the fastest way to expedite the situation was

for the Plaintiff to file a qualified request for determination, reserving its rights to determine its status under the Site Location of Development Law at a later date." This suggestion was adopted by Plaintiff's counsel and the record bears out that all applications filed by the Plaintiff with the Commission were made subject to this reservation of rights.

On May 15, 1970, while Plaintiff's qualified application was pending, the Commission "determined as a matter of policy" that the Plaintiff was subject to the Site Location of Development law. This determination was made without notice and without any opportunity given the Plaintiff at a hearing for that purpose to present evidence. Plaintiff then participated on May 22, 1970, under protest and reservation of rights, at a hearing before the Commission on Plaintiff's qualified application for license. On July 2, 1970 the Commission denied the license.

Section 487 of the Site Location of Development law provides for judicial review of Commission action, as follows:

"Any person, with respect to whose development the commission has issued an order after hearing pursuant to section 484 may within 30 days after notice of such order, *appeal therefrom to the Supreme Judicial Court.* Notice of such appeal shall be given by the appellant to the commission. The proceedings shall not be de novo. Review shall be limited to the record of the hearing before and the order of the commission. The court shall decide whether the commission acted regularly and within the scope of its authority, and whether the order is supported by substantial evidence, and on the basis of such decision may enter judgment affirming or nullifying such determination." [Emphasis added.]

Perplexed by the language of this statute which directs the appeal from a Commission order to be made to the "Supreme Judicial Court," Plaintiff has brought 5 complaints for declaratory judgment, one each in the Superior Courts of Cumberland and Kennebec Counties, one each in the Supreme Judicial Courts of Cumberland and Kennebec Counties and one in the Supreme Judicial Court sitting as the Law Court. Plaintiff also filed seasonably in the same courts 5 separate appeals from the decision of the Commission. All five complaints for declaratory judgment were consolidated upon motion in the Superior Court in and for the County of Cumberland for hearing before the Supreme Judicial Court sitting as the Law Court. They are here on report. The appeals remain pending and are not before us.

The Defendant Commission raises the threshold issue of jurisdiction. Was it within the power of the Superior Court of Cumberland County to entertain Plaintiff's complaint for declaratory judgment and report the same to this Court for decision?

The powers of the Environmental Improvement Commission are wholly statutory. If it exceeds its authority the Commission acts without jurisdiction and its orders are of no effect and are subject to collateral attack. See, Stoddard v. Public Utilities Commission, 1941, 137 Me. 320, 19 A.2d 427. Our Court indicated in *Stoddard* that if the question of jurisdiction is open to the parties on appeal such procedure must be followed to the exclusion of any other.

Ordinarily, where a statute confers new rights and provides a special remedy or fully regulates the procedures for relief, then we must assume the Legislature intended the same to be exclusive and not cumulative. Nash v. Inhabitants of Sorrento, 1919, 118 Me. 224, 107 A. 32; Jameson v. Cunningham, 1936, 134 Me. 134, 183 A. 131. We continue to subscribe to this rule.

Furthermore, in Stanton v. Trustees of St. Joseph's College, 1967, Me., 233 A.2d 718, we indicated that where a statute provides a remedy before an administrative agency, not only is the remedy exclusive

but the plaintiff must exhaust that remedy before he can turn to the courts for relief. In accepting the doctrine of exhaustion of administrative remedies as a general principle, we recognized, however, that *special circumstances* may require a relaxation of the rule.

■ We are satisfied that such special circumstances exist in the instant case. In the first place, this record shows that the Commission's ruling regarding the Plaintiff's exemption status under the Act was made as a matter of Commission policy without notice and hearing. Further pursuance of the administrative appeal process to its ultimate conclusion would fail to finalize the status issue. The Plaintiff, the Commission and the public as well, are entitled to an early resolution of such an important issue without the delay of a defective proceeding and a probable remand. In the second place, in the absence of a judicial construction of section 487, the appeal process is so clouded in uncertainty that we cannot say the administrative remedy is adequate protection of Plaintiff's rights. The consequences attending an erroneous conclusion and the pursuit of an appeal to the wrong court could be disastrous.

The instant complaint for declaratory judgment and the Court's jurisdiction thereof are grounded in our Declaratory Judgments Act, 14 M.R.S.A., §§ 5951–5963, inclusive. See also Rule 57, M.R.Civ.P. The Act provides in section 5954 as follows: "Any person * * * whose rights, status or other legal relations are affected by a statute, * * * may have determined any question of construction or validity arising under the * * * statute, * * * and obtain a declaration of rights, status or other legal relations thereunder."

This Court in Jones v. Maine State Highway Commission, 1968, Me., 238 A.2d 226, cited with approval the text in Borchard, Declaratory Judgments (1941) at page 21: "It is sufficient if a dispute * * * as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served." We stated specifically in *Jones* that "when a complainant makes a claim of right buttressed by a sufficiently substantial interest to warrant judicial protection and asserts it against a defendant having an adverse interest in contesting it, a justiciable controversy exists."

Determination of the justiciability of the issue submitted for declaratory judgment must be made on a case by case consideration. *Jones,* supra. The presence of what the court concludes is an important public issue may be a significant factor in its exercise of jurisdiction. *Jones,* supra. See also, Socec v. Maine Turnpike Authority, 1957, 152 Me. 326, 129 A.2d 212; School Administrative District #3 v. Maine School District Commission, 1962, 158 Me. 420, 185 A.2d 744; Holbrook Island Sanctuary v. Inhabitants of Town of Brooksville, 1965, 161 Me. 476, 214 A.2d 660.

Courts have a broad measure of discretion in deciding whether to grant declaratory relief, and in the absence of special circumstances such as exist in the instant case, a court may be moved to decline to entertain an action for a declaratory judgment where the administrative remedy is clear and adequate. 22 Am.Jur.2d Declaratory Judgments, §§ 9, 15, and 16. See also, 14 M.R.S.A. § 5958.

As a remedial statute the Declaratory Judgments Act is entitled to a liberal construction to effectuate its salutary purpose. This in turn will occasion liberality in the exercise of the court's discretion. Maine Broadcasting Company, Inc. v. Eastern Trust & Banking Company, 1946, 142 Me. 220, 49 A.2d 224; Maine Sugar Industries, Inc. v. Maine Industrial Building Authority, 1970, Me., 264 A.2d 1.

A proceeding for a declaratory judgment may be maintained even though an-

other remedy is available. Maine Broadcasting Co. v. Eastern Banking Co., supra; Higgins v. Robbins, 1970, Me., 265 A.2d 90.

Relief by declaratory judgment need not necessarily rest on the court's jurisdiction to act in some common law action. The existence of a valid reason, accompanied by the necessary ingredients of presence of controversy, adversity and substance of interest and justiciability of issue as enumerated in *Jones,* supra, is sufficient for the court in the exercise of a sound discretion to entertain and decide a complaint for declaratory judgment.

Considering the circumstances of the instant case, the important public issue involved, the apparent futility of carrying the administrative proceedings to their ultimate conclusion, the uncertainty of the statutory appeal provision, and the urgent need in the interests of the Plaintiff, the Commission and the public, to have the Plaintiff's status under the statute determined without any further delay, we hold that the Superior Court for the County of Cumberland properly exercised jurisdiction over the Plaintiff's complaint for declaratory judgment and that said complaint is properly before us on report.

The issue for our determination is, whether the Plaintiff's development was in existence or under construction on January 1, 1970 within the terms of the Site Location of Development law and expressly exempted from its provisions. 38 M.R.S.A. § 488. (Public Laws, 1969, c. 571, s. 2).

The Plaintiff's intended use of the premises is no different in kind from the use to which the property was adapted and actually put during World War II and subsequently thereto. The United States Navy had used the facilities to receive and store oil for the purpose of fueling government ships. The Plaintiff's operation of the premises as a commercial oil terminal for the transfer or storage of oil, petroleum products or their by-products will be but a resumption of the former use suspended by the government when the facility became surplus property in 1968.

 True, tax exemption statutes have been construed by this Court strictly against the taxpayer. The rationale upon which the rule rests is that special tax exemptions are in conflict with the general duties of all to contribute their just proportion toward the public burdens. Bangor v. Masonic Lodge, 1882, 73 Me. 428. The Site Location of Development law, designed to control and regulate the location of commercial and industrial developments with respect to the natural environment of the State, is in the nature of a zoning statute, vesting the Environmental Improvement Commission with the police power of the State to exercise such control and regulation over the location of such developments for the express purpose of minimizing the adverse impact which such commercial and industrial enterprises may have on the natural environment of their surroundings.

We said in Toulouse v. Board of Zoning Adjustment, 1952, 147 Me. 387, 87 A.2d 670:

"The restrictions of zoning statutes and zoning ordinances authorized by statute, are in derogation to the common law and should be strictly construed. Where exemptions appear in favor of the property owner, the exemptions should be construed in favor of the owner."

In Stanton v. Trustees of St. Joseph's College, 1967, Me., 233 A.2d 718, at page 722, we restated the well-established rule of statutory construction to the effect that the common law is not to be changed by doubtful implication or overturned except by clear and unambiguous language and that a statute in derogation of it will not effect a change thereof beyond that clearly indicated either by express terms or by necessary implication. The operation of an oil terminal facility on Long Island was a lawful use under the common law and under the zoning ordinances of the City of Portland, and the Plaintiff has the right

to exercise that use without State control under the Site Location of Development law if the development was in existence or under construction on January 1, 1970.

Legislative intent is the fundamental rule in the construction or interpretation of statutes. Depositors Trust Company of Augusta v. Johnson, 1966, Me., 222 A.2d 49. Such a construction ought to be put upon a statute as may best answer the intention which the Legislators had in view, and when determinable and ascertained, the courts must give effect to it. W. S. Libbey Co. v. Johnson, 1953, 148 Me. 410, 94 A.2d 907.

■ It is to be noted that Section 488 exempts developments *in existence* on January 1, 1970. The Legislature could have limited the non-applicability of the Act to developments in operation on January 1, 1970. It did not. Compare 38 M.R.S.A., § 413. An existing development, as an existing use, should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose. The use of Long Island by the Navy was known throughout the area as an oil terminal or depot. Although actual operations had ceased for the time being, the land and the facilities thereon remained adapted for their original purpose and both the government and the Plaintiff purchaser did nothing inconsistent with the continued employment of the premises within that initial purpose. In its efforts to find a purchaser, the government in advertising for bids to the general public fully described the nature of the complex, including the fuel tank farm, generally known to be used for the storage of oils. Plaintiff bought an existing oil terminal facility, with intent to resume its actual operation after modernization and upgrading of the whole complex. The use or development was in existence notwithstanding it may not have been in actual operation on January 1, 1970. When the Legislature meant to refer to a development being "operated," as in 38 M.R.S.A., § 413, it said so. This is a significant indication that

the term "in existence" was not used as a synonym of "in operation". See De Felice v. Zoning Board of Appeals of Town of East Haven, 1943, 130 Conn. 156, 32 A.2d 635. The development on Long Island as an oil terminal facility was an existing development on January 1, 1970, fully operational, notwithstanding that its pier was being repaired. Negotiations with numerous companies had been carried on prior to January 1, 1970 pending actual operation of the terminal which was to follow the repair of the pier. The cessation of operations never had ripened into an abandonment of the existing development. See, Dorman v. Mayor and City Council of Baltimore, 1947, 187 Md. 678, 51 A.2d 658; Appeal of Haller Baking Co., 1928, 295 Pa. 257, 145 A. 77; Landay v. MacWilliams, 1938, 173 Md. 460, 196 A. 293, 114 A.L.R. 984.

We recognize that a mere contemplated or intended use, standing alone, is not sufficient. This is not the situation in the instant case. The scope of the previous use of Long Island by the United States Navy, prior to the enactment of 38 M.R.S.A. § 488, is clear. The premises on January 1, 1970 were fully adapted to the resumption of the storage and transfer of oil and petroleum products as existed before under government operations. There never was an abandonment in law of the pre-existing use. The modernization program of the existing oil terminal facility was practically concluded. It was operational as such. There remained only the construction of additional wharfing to the pier now standing at the site. This was but a small fraction of the expenditures incurred by the Plaintiff in its program of upgrading the existing complex.

Construing the statutory exemption in favor of the owner as we must under the rule of *Toulouse,* supra, we are persuaded that the Plaintiff's oil terminal facility on Long Island was in existence on January 1, 1970 and as provided by 38 M.R.S.A., § 488, it was the intent of the Legislature that subchapter I of chapter 3 of Title 38, as amended, including new Article 6

entitled "Site Location of Development" was not applicable to the Long Island complex. We so hold.

One of the issues submitted in the instant report is:

"Does the Superior Court lack jurisdiction over the subject matter because the issue of jurisdiction is reviewable only, if reviewable at all, by the Supreme Judicial Court of Maine pursuant to 38 M.R.S.A., Section 487?"

■ Since the Plaintiff's status respecting the application of the Site Location of Development law has been adjudicated under our Declaratory Judgments Act, the controversy between the parties concerning the meaning of Section 487 of Chapter 38 providing an appeal to the Supreme Judicial Court from any order of the Environmental Improvement Commission after hearing pursuant to 38 M.R.S.A. § 484, has now become moot. We recognized in Hazzard v. Westview Golf Club, Inc., 1966, Me., 217 A.2d 217, that an appellate court will not, as a general rule, decide abstract propositions of law. However, the certainty of the proper appeal process under 38 M.R.S.A. § 487 is a matter of great interest to the public generally and to the Commission charged with the enforcement of the Site Location of Development law. The dilemma with which the Plaintiff was confronted is likely to recur and private rights may be lost or useless expenditures of moneys may be made if an authoritative determination of the meaning of the judicial review clause is not presently available for the future guidance of the public and the Commission.

"Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." People ex rel. Wallace v. Labrenz, 1952, 411 Ill. 618, 104 N.E. 2d 769, 30 A.L.R.2d 1132.

It is of the greatest importance to the public that administrative orders in the area of environmental control be not subject to the delays of a questionable appellate review process. Delays occasioned by reason of an ambiguous statutory provision could be very detrimental to the public interest which the law is ordained to protect.

Questions of great public interest originally encompassed in an action may be decided, as a matter of judicial discretion, for future guidance, after they have become moot in the immediate contest. Ashmore v. Greater Greenville Sewer District, 1947, 211 S.C. 77, 44 S.E.2d 88, 97, 173 A.L.R. 397. This exception is well recognized when interests of a public character and of importance in the administration of justice generally are involved. McCanless v. Klein, 1945, 182 Tenn. 631, 188 S.W.2d 745. See also, 5 Am.Jur.2d Appeal and Error, § 768.

■ We view the appeal provided by 38 M.R.S.A. § 487 to be to the Supreme Judicial Court sitting as the Law Court. It is true that under 38 M.R.S.A. § 415 appeals from orders or decisions of the Water and Air Environmental Improvement Commission are to the Superior Court. We cannot surmise however that the Legislature meant the Superior Court in section 487 when it specifically provided that the appeal be to the Supreme Judicial Court. A distinguishing feature between the two sections is that in section 415 the appellate court (Superior Court) is empowered to receive such further evidence as the court in its discretion deems proper. In section 487 review is strictly limited to the record of the hearing before the commission and the order of the commission. Furthermore, the statute provides that the proceedings shall not be de novo. This restriction is analogous to the provisions of 35 M.R.S.A. § 305 (appeals from the Public Utilities Commission) which state that no evidence beyond that contained in the record of the

proceedings had before the commission shall be introduced before the court, except * * * (the exception is not pertinent).

We must assume that the Legislature was cognizant of the dual characteristics of the Supreme Judicial Court. As mandated by the Constitution of Maine, Article VI, § 1, the Supreme Judicial Court is a common law court. It has supervisory powers over the inferior courts of the State. It exercises such constitutional jurisdiction, when sitting at nisi prius. On the other hand, the Legislature has vested the Supreme Judicial Court with specific appellate review powers. 4 M.R.S.A. § 57. These powers the Supreme Judicial Court exercises when sitting as the Law Court. See, Carroll v. Carroll, 1949, 144 Me. 171, 175, 66 A.2d 809; Potter v. Schafter, 1965, 161 Me. 340, 341, 211 A.2d 891. Even though statutory and court rule terminology has generally referred to the "law court" when meaning the Supreme Judicial Court sitting as the Law Court, the Law Court is still the Supreme Judicial Court and the Legislature so understands. See, 4 M.R.S.A. §§ 51, 53 and 57.

Appellate review by the Supreme Judicial Court at nisi prius would serve no useful purpose, as the appeal from any order of the Environmental Improvement Commission is strictly on the record with no grant of power in the Court to hear evidence anew or to receive further evidentiary matter. Such a construction of Section 487 would undermine the streamlining purpose underlying our new rules of civil procedure by initiating multiple forms of review which this Court has so recently abolished except by appeal to the Law Court.

We fully believe that the Legislature did not intend such a substantial departure in our established appellate review proceedings and that any appeal from an order of the Environmental Improvement Commis-

sion must be to the Supreme Judicial Court sitting as the Law Court.

The other issues presented are either not before us or without merit.

The entry will be

Remanded to the Superior Court for further proceedings consistent with this opinion.