## CHARLES F. KNOX *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 61, October Term, 1941.]

*Decided December 4, 1941.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*H. Clifton Owens* and *Hall Hammond* for the appellant.

*Wilson K. Barnes, Assistant City Solicitor of Baltimore,* with whom was *Charles C. G. Evans, City Solicitor of Baltimore,* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court affirming a decision and resolution of the Board of Zoning Appeals of Baltimore City.

Sometime previous to January 1, 1931, and not before the year 1929, Charles F. Knox, the appellant, became a squatter on the lot known as No. 4403 Alhambra Avenue, Baltimore, belonging to a Mr. McColgan, and on January 1, 1931, rented the lot from Mr. McColgan at the rate of $10 per month. This lot is in a residential use D area district under Zoning Ordinance 1247 approved on March 30, 1931. A public playground of the city of Baltimore is located in front of this lot and the lot is surrounded by a residential use district. Mr. Knox was engaged in the wrecking and hauling business and dumped in a large ravine on this lot cinders and old mortar obtained from cleaning bricks and filled up the ravine on the lot principally with mortar and bricks. Paragraph 8 of Zoning Ordinance No. 1247, supra, prohibits in a residential use district storage yards for building or structural materials or equipment and yards for the display, storage or sale of motor vehicles or merchandise as well as business or

garage uses. Private garages are permitted by Paragraph 3 of the Zoning Ordinance. In 1936, he purchased the lot from Mr. McColgan under a ninety-nine year lease and on November 9, 1936, he filed an application for a permit to erect one dwelling and one garage twenty-four feet by twenty-five feet on this lot and a permit therefore was issued on November 24th of that year. The garage was built but he did not build the dwelling. He said that he was misled by the Building Engineer's office as to the best method of getting a garage on the lot, that he was told there that if he wanted to get something quick, to make application for a dwelling and garage and he could immediately get a permit and start construction. He admitted that he intended to build a dwelling house for his son-in-law. He immediately started and built the garage but could not raise the money to build the dwelling house.

In February, 1939, the appellant filed an application with the Board of Zoning Appeals, "To construct an addition for tool storage and to continue to use lot for storage of building materials and trucks at 4403 Alhambra Avenue." The addition was to be ten by twenty-four feet. On February 28th, after a public hearing, the Board found that a non-conforming use had been established and approved the application. Paragraph 39 of Ordinance 1247, supra, provides, "that permits obtained by reason of a variance or special exception by the Board of Zoning Appeals, shall be exercised by the grantee therein named within six months from the date of the final action which made the permit valid." The applicant did not construct the addition for tool storage within six months and therefore the permit became null and void.

The addition for a tool house not having been erected within six months, in November 1939, an appeal was filed by Mr. Knox with the Board of Zoning Appeals to construct a tool house and garage at 4403 Alhambra Avenue the size to be seventy-two feet by thirty-six feet six inches. After a hearing before the Board of Zoning Ap-

peals on that application, which was a much more thorough hearing than the previous one, the Board of Zoning Appeals on January 2, 1940, found that, "The weight of the evidence seems to sustain the conclusion that no non-conforming use has been established." The permit was refused and no appeal was taken from that action.

On September 4, 1940, an appeal was filed by Mr. Knox from the decision of the Building Engineer to the Board of Zoning Appeals "To construct an addition and to continue the use of the lot and the garage thereon for the storage of building material and trucks. The addition was to be twenty-four feet by twelve feet. At the hearing, Mr. Knox withdrew the part of the application relating to the right to store building materials. After a hearing before the Board of Zoning Appeals on September 19, 1940, a resolution was filed by that Board reiterating that no non-conforming use had been established and that, "at this time no facts were presented sufficient to warrant approval of a concrete block addition twenty-four feet by twelve feet to be used as a tool house. Therefore, the Board sustains the action of the Building Engineer in disapproving the permit." An appeal was taken by Mr. Knox from this resolution to the Baltimore City Court, against the Mayor and City Council of Baltimore and the Board of Zoning Appeals, and was heard by that court without intervention of a jury. A motion was filed by the Board of Zoning Appeals reciting that under the decision in the case of *Board of Zoning Appeals v. Albert McKinney,* 174 Md. 551, 199 A. 540, 117 *A. L. R.* 207, that the said Board of Zoning Appeals has no right to litigate in the Baltimore City Court appeals of this nature. On the 24th day of May 1941, the Baltimore City Court passed an order that the decision and resolution of the Board of Zoning Appeals of Baltimore City dated September 19, 1940, be affirmed, and granted the petition to dismiss the appeal as to the Board of Zoning Appeals. An appeal is taken to this court by Charles F. Knox from that order. The use requested by this permit is a non-

conforming use. Paragraph 11 of Ordinance 1247, supra, provides in part "nothing contained in this ordinance shall be construed to prevent the continuance of any use which now legally exists."

Appellant contends that the resolution passed by the Board of Zoning Appeals on February 28, 1939, holding that a non-conforming use existed at the time of the passage of the Zoning Ordinance on March 30, 1931, was *res judicata* as to whether the appellant had a non-conforming use in the lot in question and cites as his authority the case of Board of Zoning Appeals v. McKinney, supra. In that case the Board of Zoning Appeals notified the counsel for both parties that the application for the permit had been refused and the Board passed such a resolution at its meeting and entered it on its minutes. After this action of the Board, another attorney entered the case and asked if "the action of the Board had been sent out," and asked the Board to hold it up. The Board decided to reconsider the case which it did when the application was approved and the permit granted. This Court held in that case that the Board of Zoning Appeals had no right to reopen and reconsider the case. The facts in the instant case are very different, for in this case, the permit granted on February 28, 1939, expired and other applications for permits were made. The first permit became null, void, and non-existant by reason of appellant's failure to exercise it within the six months period. The case was not reopened but entirely new cases instituted. In *Mayor and City Council v. Linthicum*, 170 Md. 245, 183 A. 531, an application for a permit was refused and later a second application was made for the same use which was refused and an appeal was prosecuted to the Baltimore City Court and the action of the Board of Zoning Appeals affirmed and at that time no appeal was allowed to this court. A third application for the same use was made, it being conceded that there had been no change either in the proposal, the use, neighborhood conditions, nor in the relevant ordinances. The Baltimore City Court on the third appli-

cation reversed the action of the Board of Zoning Appeals and an appeal was taken from that action to this court. Chief Judge Bond said in that case at pages 247 and 248 of 170 Md., at page 532 of 183 A.: " 'An existing, final judgment or decree rendered upon the merits, and without fraud or collusion, by a court of competent jurisdiction, upon matters with its jurisdiction, is conclusive of the rights of the parties or their privies, in all other actions or suits in the same or any other judicial tribunal of concurrent jurisdiction, on the points and matters in issue in the first suit.' *Christopher v. Sisk*, 133 Md. 48, 51, 104 A. 355, 356; *Emmert v. Middlekauff*, 118 Md. 399, 404, 84 A. 540." The Board of Zoning Appeals not being *a court of competent jurisdiction or judicial tribunal,* it cannot be held that the resolution passed by that Board on February 28, 1939, was *res judicata* as to whether appellant had a non-conforming use in the lot in question.

Appellee contends that if a non-conforming use existed that appellant lost the use by a change to a higher classification and that he abandoned the alleged non-conforming use. Paragraph 11 of Ordinance 1247, supra, provides in part, "A non-conforming use may be changed to a use of the same classification or to a use of a higher classification. A non-conforming use, if changed to a use of a higher classification, may not thereafter be changed to a use of a lower classification." Appellant admits that in 1936 he applied for a permit to build a dwelling and garage on the lot in question. As hereinbefore stated, he claimed that he was misled by the Building Engineer's office when he applied for this permit. Judge Offutt said in the case of *Landay v. Board of Zoning Appeals*, 173 Md. 460, at page 469, 196 A. 293, at page 297, 114 *A. L. R.* 984: "Abandonment in law depends upon the concurrence of two, and only two, factors; one an intention to abandon or relinquish; and two, some overt act, or some failure to act, which carries the implication that the owner neither claims nor retains any interest in the subject-matter of the abandonment." As to the intention of appellant and some other act on his part, he admits

that he applied for the permit and obtained it, that he built the garage and the reason he did not build the dwelling house was because he could not finance it. He contends, however, that he never ceased storing building material and trucks on the lot.

As hereinbefore set forth, the Board of Zoning Appeals on February 28th found that non-conforming use on this lot was in existence on March 20, 1931. By its hearings on January 2, 1940 and on September 19, 1940, the Board found that a non-conforming use did not exist on this lot on March 30, 1931. Appellant being in the business of tearing down old buildings and saving the brick and other materials from thest buildings, claims that previous to March 30, 1931, he used the lot for storage of these materials. One witness testified that appellant had used the lot since 1930 for the storage of brick and cinders. A woman, from whom appellant had been renting a lot for the purpose of cleaning bricks which lot adjoins the one in question, testified that appellant had used the lot since the fall of 1930 for storing building materials and trucks. Another witness testified that material was placed on the lot in 1930. The former owner, Mr. Mc-Colgan, also testified that material was stored on the lot before 1931. It is definitely established that appellant had rented the lot since January 1, 1931. On the other hand, however, testimony was presented by protesting neighbors who testified that the lot was not in use for the storage of trucks or building materials previous to March 30, 1931, or during the year 1931. Without repeating all of the testimony, it must be concluded that Mr. Knox dumped cinders, old bricks, and mortar obtained from cleaning bricks on the adjoining lot, in the ravine on the lot in question thereby filling it in, but it cannot be concluded that the lot was used for storage of building materials and trucks previous to the passage of the Zoning Ordinance on March 30, 1931. When asked the condition of the lot prior to the time he purchased it, appellant replied, "It was just a ravine. The front of it was about two feet below street level." He further said that

he filled it up principally with mortar and brick. A Mr. Brooks, the Zoning Engineer, testified that the Sanford Atlas Map, prior to March 30, 1931, shows the lot to be a vacant piece of land. It must be concluded therefore that the decision of the Board of Zoning Appeals and of the Baltimore City Court that a non-conforming use did not exist on the lot in question on March 30, 1931 must be affirmed.

Finally, assuming that a non-conforming use existed as to this lot at the time of the passage of the Zoning Ordinance on March 30, 1931, the granting of the permit in question would be an extension of this alleged non-conforming use. Paragraphs 12 (b), 32 (j) or 33 of the Zoning Ordinance had not been amended at the time of the hearing and resolution passed by the Board of Zoning Appeals. Chief Judge Bond said in the case of *Chayt v. Zoning Appeals Board,* 177 Md. 426, at pages 434, 435 and 436, 9 A. 2d 747, at page 750, in speaking of Zoning Ordinance 1247, supra: "It has made allowance for the continuance of non-conforming uses of land found in 1931; it has not left such uses open to expansion as businesses might render expansion desirable. On the contrary it has restricted them. Even expansion to another portion of a non-conforming building is made subject to a condition. 'A non-conforming use may not be extended, except as hereinafter provided, but the extension of a use to any portion of a building, which building is now arranged or designed for such non-conforming use, shall not be deemed to be an extension of a non-conforming use.' Par. 11. And by par. 12(b) the Board of Zoning Appeals has been given power to permit in its discretion 'a use of the same classification necessary or incidental to a non-conforming use now existing in a first commercial or in a residential district within fifty feet from such existing non-conforming use, provided such fifty foot measurement shall not extend across a street.' * * * Wisely or unwisely, in the zoning of the area as a residential area, the use was restricted; land held for future use was not excepted. The court does not understand it

to be argued that stopping the expansion of non-conforming uses is an unreasonable, arbitrary, or oppressive exercise of governmental power. *Lipsitz v. Parr,* 164 Md. 222, 234, 164 A. 743. Decisions on the subject in other jurisdictions appear to support the views here expressed, some of them going farther in restricting expansion of non-conforming uses than it is necessary for the purposes of this case. * * * The power given to the Board of Zoning Appeals to make exceptions is found in paragraphs 32 and 33, and has been held to violate the constitution in its breadth. *Jack Lewis, Inc. v. Mayor and City Council,* 164 Md. 146, 164 A. 220; *Sugar v. North Baltimore M. E. Church,* 164 Md. 487, 165 A. 703. And the ordinance could not be construed to intend the fullest possible breadth of the words, for if the Board might make exceptions without limit, the carefully framed provisions of the law would have no value. The contention discussed in the briefs is that power may still be validly implied from the provision in paragraph 32(j), which restrains the making of exceptions to cases in which no hazards from fire or disease are created by it, or the public health, security or morals are not menaced. The court cannot find any power open to implication in that section, for it is merely one to restrain power given elsewhere; and it is that power given elsewhere that has been found excessive and invalid. But in this case it seems unnecessary to say more than that could not consistently with the purpose of the ordinance sanction the expansion of a non-conforming use to such an extent as has been planned. The power refers to less radical adjustments." Further in the instant case, at a hearing, after public notice given, where the Board of Zoning Appeals heard all the parties and their counsel, considered the case on its merits, the director of the Department of Public Recreation for Baltimore City, testified that the building of this garage for the storage of trucks was a hazard to the children playing on the City Playground directly across from the lot in question. He said, "The point I would like to make—there will be two entrances

to the playground on Alhambra Avenue that will be opposite the area that is proposed for the extension of the garage, and the Recreation Department would not want to see any additional hazard created because this unpaved street without a sidewalk will be used by the children and others to come into the playground." Some of the neighbors in this residential district testified that the trucks made much noise, shook the houses, tore down hedges, and were a disturbance to this residential district and further that the dust and dirt from cleaning of bricks was very objectionable. It appears that the building of this extension to the garage, an extension of an alleged non-conforming use, would be a hazard to the public welfare, security and health of this residential district. Therefore, the order passed by the Baltimore City Court on May 24, 1941, sustaining the Board of Zoning Appeals in refusing the permit, was proper. In view of the decision of this Court in the case of *Board of Zoning Appeals v. Albert McKinney, supra,* that the Board of Zoning Appeals has no right to litigate in the Baltimore City Court, that court was correct in granting the petition to dismiss the appeal as to the Board of Zoning Appeals.

> *Order affirmed, costs to be paid by the appellant.*

SLOAN and MARBURY, JJ., concur in the result.