481 A.2d 513

**BOARD OF COUNTY COMMISSIONERS OF WASHINGTON COUNTY, MARYLAND**

v.

**H. MANNY HOLTZ, INC.**

**No. 1683, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

Oct. 3, 1984.

David K. Poole, Jr., Hagerstown, with whom were William C. Wantz and Kaylor, Poole & Wantz, Hagerstown, on the brief, for appellant.

John H. Urner, Hagerstown, with whom were Urner, McGrory, Nairn, Barton & Schaefer, Hagerstown, on the brief, for appellee.

Argued before WILNER, ALPERT and BLOOM, JJ.

WILNER, Judge.

We have before us an anomaly: a zoning case with some interesting legal questions. We shall address only one of them.

In 1982, appellee H. Manny Holtz, Inc. (Holtz) filed an application with the Board of County Commissioners of Washington County for a zoning map amendment to reclassify a certain tract of land from Residential, Urban to Business, Local.[1] Under § 11.1 of the county zoning ordinance, there are seven categories of principal permitted uses in a business, local zone—(1) a variety of at least thirty-six types of retail or service shops, (2) commercial parking lots, (3) funeral homes, (4) offices and clinics, (5) retirement, nursing, and boarding homes, (6) schools of various types, and (7) social clubs and community meeting halls. Although the application did not propose, or seek to be limited to, any one or more of those uses, both before the Planning Commission and the Board of County Commissioners, Holtz indicated that it intended to develop a convenience food store (a "Sheetz Kwik Shop") on the property and had entered into a contract with Sheetz for that pur-

---

1. As required by Md.Code Ann. art. 66B, § 4.07, the county zoning ordinance provides for a board of zoning appeals. The board's authority, however, as set forth in § 4.07(d) and in art. 25 of the zoning ordinance, does not extend to actual rezoning, but is limited to deciding appeals from orders of the zoning administrator, special exceptions, and variances. Applications for reclassification must be made directly to the Board of County Commissioners, which alone is authorized to approve them.

pose. Such a store is plainly allowed under the first category of permitted uses.

The core issue before the Board of County Commissioners was whether there had been a change in the neighborhood since the last comprehensive rezoning in 1973 and since an intervening application by Holtz for rezoning had been rejected in 1977. No evidence was presented to warrant a finding of initial mistake in placing the property in the residential zone. The Planning Commission, which is an advisory body to the Board, recommended rejecting the application, finding an insufficient change to warrant approval. At the public hearing before the Board on January 11, 1983, however, contrary evidence, tending to show substantial changes in the area, was presented on behalf of Holtz.

At one point during the public hearing, one of the County Commissioners asked a Holtz witness whether Holtz had given "any thought to some form of conditional zoning," to which the witness responded that "originally, in our submission before the Planning Commission, we had talked about restricting uses," but that Holtz currently had a contract with Sheetz and that its intent was "to develop this property in a way that it is going to be compatible and also provide commercial business that will serve the area."

When the hearing concluded, the Board chairman announced that the record would remain open for ten days for further comment. A few letters, mostly from area residents protesting the application, were received during that period.

On February 1, 1983, without further notice or hearing, the Board rendered its decision. The minutes of that meeting express the decision thusly:

"After due consideration of all the matters and facts adduced at the Public Hearing held on January 11, 1983, and the comments received in writing during the ten (10) day period following that date, and having given consideration to the Planning Commission's staff report concern-

ing increase of traffic, a MOTION was made by Commissioner Roulette, seconded by Salvatore, to approve of the request of H. Manny Holtz, Inc. for the reclassification of land located at 1901–1903 Virginia Avenue intersecting with Marbern Road, consisting of 33,400 sq. ft., from the present 'RU' (Residential Urban) Zoning Classification to the 'BL' (Business Local) Zoning Classification on the basis that there has been a change in the character of the neighborhood; with said rezoning conditional upon the use of said property being limited to the principal permitted uses as defined in Article 11, Section 11.1, (c), (d), (e), and (f) of the Washington County Zoning Ordinance. Motion carried with Commissioner Bowers voting 'AYE' and Commissioners Downey and Snook voting 'NO'. Commissioners Downey and Snook qualified their negative votes as opposition to the conditions imposed in this case, and not against the rezoning."

What this seems clearly to say is that: (1) all five Commissioners voted *for* the rezoning "on the basis that there has been a change in the character of the neighborhood"; (2) three of the Commissioners—a majority—voted, as a condition to the rezoning, that the use of the property be limited to a funeral home (§ 11.1(c)), an office or clinic (§ 11.1(d)), a retirement, nursing, or boarding home (§ 11.-1(e)), or an art, trade, business, or nursery school (§ 11.1(f)); and (3) the other two Commissioners voted for the rezoning without conditions.

The effect of the Board's decision, of course, was to preclude Holtz from using the property in a manner clearly authorized for a business, local zone and as Holtz in fact intended to use it. Receiving considerably less than half a loaf—mostly the crust—Holtz appealed to the Circuit Court for Washington County, complaining that the Board was "without authority to limit the principal uses permitted in a Business Local District" and that, on the record before the Board, "the imposition of the conditions ... was without substantial evidence and was arbitrary and capricious."

Holtz asked that the court affirm the rezoning but reverse that portion of the decision limiting the use of the property.

Regarding itself as a party to the proceeding, the Board filed an answer to Holtz's petition for appeal. In its answer, the Board admitted Holtz's averments in paragraphs 5 and 6 that the evidence before the Board "proved that there was a change in the character of the neighborhood which justified *and compelled* the rezoning to Business Local" and that such evidence "did prove a convincing demonstration that the proposed rezoning would be appropriate and logical for the subject property." (Emphasis supplied.) It did, however, deny the accusatory allegations regarding the conditions and asked that the petition simply be dismissed. In an accompanying memorandum, the Board urged that it had authority under State and county law to impose the conditions complained of and submitted, as its conclusion, that "the rezoning of the property to Business Local was justified by a change in character of the neighborhood and that the restrictive conditions and limitations placed on the Business Local category were proper." Thus was the case submitted to the circuit court. The Board was accepted as a party and exercised the rights of a party.

In an opinion filed October 28, 1983, the court concluded that the rezoning was valid, but that the conditions attached to it were not. The basis for striking down the conditions was not the lack of substantive authority on the part of the Board to impose them, however, but rather the fact that they had been imposed without an opportunity by Holtz (or anyone else) to present evidence or argument in opposition to them, and without explanation by the Board. Based in part upon a provision in Md.Code Ann. art. 66B, § 4.01(b) and in part upon its conception of due process requirements, as explicated in a 1978 opinion of the Attorney General (63 Op.Att'y Gen. 531), the court concluded that the procedure followed by the Board was "inadequate to satisfy the minimum requirements of procedural due process of law." [2] It

---

2. The heart of the court's decision on this point was as follows:

also found a violation of substantive due process "in failing to make findings of fact to substantiate the imposition of conditions to the rezoning." Finding the Board's decision "divisible," however, the court sustained the rezoning and rescinded the illegal conditions.

The Board, feeling itself aggrieved by the court's action, has brought this appeal to us. It concedes that, procedurally, the conditions were improperly imposed and for that reason are invalid. It argues most earnestly, however, that the court overstepped its bounds in affirming the rezoning *sans* the conditions and insists that what the court should have done was to remand the case to it for further proceedings. In that way, it says, the procedural deficiencies—lack of notice, opportunity to be heard, and explanations for any conditions imposed—could be corrected. Merely striking down the conditions and approving the rezoning unconditionally, the Board contends, amounts to judicial zoning, which is impermissible.

### (1) *Standing of the Board to Appeal*

The Board, as we have noted, was the body that heard and determined the rezoning application, and that raises some preliminary questions as to its standing to pursue this appeal. As we shall see, the questions are not easy ones; the general rules that apply so well in other contexts do not quite fit when applied to a board of county commissioners.

We start our analysis with *Zoning Appeals Board v. McKinney*, 174 Md. 551, 199 A. 540 (1938). The Zoning Appeals Board of Baltimore City was a body created by law and empowered, among other things, to issue permits for

---

"The Court holds that notice and hearing are the minimum requirements to satisfy procedural due process. The conditional zoning provisions of the Washington County Zoning Ordinance do not provide for either notice or hearing. Therefore, these provisions fail to comport with the minimum requirements of due process and are fatally defective. Although conditional zoning is permitted under the Maryland statute, it is invalid under the Washington County Zoning Ordinance *because of this defect.*" (Emphasis supplied.)

filling stations. *McKinney* arose when the board approved such a permit and, on appeal by a protestant, the Baltimore City Court reversed. The board then noted an appeal to the Court of Appeals.

The appellate court dismissed the appeal, after concluding that the board had no standing to bring it. The Court recognized that, even without special statutory authority, "a municipality has the same right to appeal as any other litigant," but that that rule was not applicable to "judicial and quasi judicial officers and boards." 174 Md. at 562–63, 199 A. 540. Such officers and boards, the Court decided, "not being a party to its proceedings, and not having any legal interest in maintaining its determination, can neither appeal from a judgment or order of a court reversing the proceedings nor be heard on the appeal." *Id.*, at 563, 199 A. 540, quoting 3 C.J. 660.

Although acknowledging that the board exercised both "quasi judicial and legislative functions," *id.* at 558, 199 A. 540, the Court, without discussion, tacitly assumed that, in considering and ultimately approving the filling station permit, the board acted in a quasi-*judicial*, rather than a quasi-*legislative*, capacity. It concluded, then, at 564, 199 A. 540:

"Since therefore the Board is not a party to this proceeding, has no interest in it different from that which any judicial or *quasi* judicial agency would have, which is to decide the cases coming before it fairly and impartially, is in no sense aggrieved by the decision of the Baltimore City Court, and has no statutory right of appeal, it had no power to take this appeal, and the appeal must be dismissed."

The rule laid down in *McKinney* has been rather consistently applied over the years. *See, for example, Roeder v. Brown,* 192 Md. 639, 65 A.2d 333 (1949); *Md. Pharmacy Board v. Peco,* 234 Md. 200, 198 A.2d 273 (1964); *Board of Zoning Appeals v. Guns,* 259 Md. 368, 269 A.2d 833 (1970); *Maryland Board v. Armacost,* 286 Md. 353, 407 A.2d 1148 (1979); and *cf. Md. Port Adm. v. C.J. Langenfelder & S.,* 50

Md.App. 525, 438 A.2d 1374 (1982). As most recently enunciated by the Court of Appeals in *Md. Board v. Armacost, supra,* 286 Md. at 354–55, 407 A.2d 1148, the rule is this:

> "Generally, an administrative agency acting in a quasi-judicial capacity cannot appeal when one of its decisions is reversed by a court of competent jurisdiction unless the authority to appeal to a higher court is provided by law. When an administrative agency functions in this capacity, it is immaterial whether the issue involved relates to a matter of procedure or substance. In either event, absent statutory authority, it has no standing to appeal."

As made clear in *McKinney* and subsequently in *Knox v. City of Baltimore,* 180 Md. 88, 23 A.2d 15 (1941), and *Adler v. M. & C.C. of Baltimore,* 242 Md. 329, 219 A.2d 22 (1966), the disqualification, or lack of standing, arises ultimately from the proposition that the agency is not a party to the administrative proceeding before it. That is why it has no cognizable interest in the outcome of the proceeding; that is why it is not regarded as a proper party in the circuit court, even as a respondent/appellee; and that is why it has no authority to appeal from a judgment of the circuit court that reverses or modifies its administrative decision.

That underlying principle does not, however, apply to the body politic itself or to other officers or agencies of the body politic. Throughout its development, this rule has operated to disqualify only the administrative agency or official who made the quasi-judicial determination that is subjected to judicial review. It has not served to prevent the municipality itself, or some other officer or agency, from being a party to the proceeding at either the administrative or judicial levels, and thus from appealing the agency decision to the circuit court, from otherwise being a party to the circuit court action, or from appealing the judgment of the circuit court. This was, as we observed, stated in *McKinney,* and was specifically recognized in *Mayor & C.C. of Balto v. Shapiro,* 187 Md. 623, 51 A.2d 273 (1947). *See also Baltimore City v. Borinsky,* 239 Md.

611, 212 A.2d 508 (1965); *Knox v. City of Baltimore, supra,* 180 Md. 88, 23 A.2d 15.

With respect to zoning cases, this distinction is now made clear as a matter of statute. Md.Code Ann. art. 66B, § 4.08(a) provides, in relevant part, that "[a]ny person ... aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body ... or any officer, department, board, [or] bureau of the jurisdiction, may appeal the same to the circuit court of the county." [3]

In this context, the Board of County Commissioners is somewhat of a hybrid. It is a unique body. As noted in *Cox v. Anne Arundel County,* 181 Md. 428, 433–34, 31 A.2d 179 (1943):

"County commissioners are outgrowths of the old levy courts originally established by the Act of 1794, Chap. 53. These courts were composed of the justices of the peace of the several counties. Their duties were to meet and to adjust the ordinary and necessary expenses of their counties, and to impose an assessment or rate on property to defray county charges. During the course of the succeeding fifty years the name 'County Commissioners' came into existence. It was the first recognized in the underlying law of the State in the Constitution of 1851, Art. 7, Sec. 8. In that Constitution it was provided that the commissioners should exercise only such powers and duties as the Legislature should from time to time prescribe. When the present Constitution of 1867 was adopted, Article VII, Section I, provided that the power and duties of county commissioners should be such 'as now or may be hereafter prescribed by law.' Until the Constitution of 1867, county commissioners were simply

---

**3.** The reference in § 4.08(a) to "any officer, department, board, [or] bureau of the jurisdiction" must necessarily exclude the agency or official whose decision is being challenged. Otherwise, it would give the decision-making agency the right to challenge its own decision in court, which is hardly a reasonable construction. We do not believe, therefore, that appellant's right to appeal in this case can derive from § 4.08(a), as it suggests.

administrative officers in charge of county finances, and taking care of the public roads.... After the Constitution of 1867 these powers could be broadened by legislative authority."

*See also City of Bowie v. County Comm'rs,* 258 Md. 454, 267 A.2d 172 (1970); 1983–84 Md.Manual, p. 493.

The General Assembly has indeed exercised its power under Art. VII, § 1 and conferred a great deal of local authority upon the respective boards of county commissioners. They are declared to be municipal corporations. Md. Code Ann. art. 25, § 1; *Neuenschwander v. Wash. San. Com.,* 187 Md. 67, 74, 48 A.2d 593 (1946). They have "charge of and control over the property owned by the county, and over county roads and bridges" (art. 25, § 1). With some exceptions and subject to State law, they have authority to appoint and remove county officers and employees, to fix the compensation of such officers and employees, to grant franchises, to collect county taxes, to receive, audit, and pay claims against the county, to prevent and remove nuisances, to provide for a county police force, to enact county ordinances, to establish and maintain parks and recreation areas, to provide for refuse collection, to create, change, or abolish county offices and departments, to adopt and enforce building, plumbing, and electrical codes, to operate flood prevention projects, and to undertake industrial redevelopment projects (art. 25, §§ 3, 14, 14A, 20). Pursuant to enabling authority enacted from time to time by the General Assembly, they may borrow money and issue bonds secured by the full faith and credit of the county. *See,* by way of example, 1982 Md.Laws, ch. 226; 1971 Md.Laws, ch. 343. All of this is in addition to their authority under art. 66B of the Maryland Code to enact, administer, and enforce zoning and land use laws. *See,* in particular, §§ 4.01 and 7.01 of art. 66B.

■ It is clear, then, that, subject to existing State law and the authority of the General Assembly to enact new public general and public local laws, the board of county

commissioners, in those counties which have one, functions as the county government. It is the county body politic. In performing its various functions, it exercises legislative, quasi-legislative, executive, and quasi-judicial authority, sometimes in combination.

To equate this unique body with an administrative zoning board whose jurisdiction and concern is carefully circumscribed would be both unrealistic and unnecessarily discriminatory. In other counties, where analogous zoning decisions are made by a special agency, the county government, which may be called upon to provide and fund new or expanded public services by reason of those decisions, clearly and necessarily has standing to challenge them, both in the circuit court and on further appeal. It would be anomalous, of course, for the county commissioners to be able to seek immediate judicial review of their own zoning decisions, and we do not suggest that they have any such authority. But, as the basic governing body of the county, they certainly have as much interest in the outcome of such review instigated by others as the governing body in a chartered county.

Viewed in this perspective, the logic and practicality of the *McKinney* rule become somewhat blurred when applied to county commissioners. We think that an exception needs to be made and that, within the language used by the Court of Appeals to express the rule, it *can* be made. The Court in *Armacost, supra,* 286 Md. at 354–55, 407 A.2d 1148, said that *"[g]enerally,* an administrative agency acting in a quasi-judicial capacity cannot appeal when one of its decisions is reversed...."* (Emphasis supplied.) "Generally" is not the same as "universally"; it suggests that there may be exceptions. Moreover, in pursuing an appeal from the circuit court, the Board of County Commissioners may very well be wearing one of its other authorized hats; its motivation and interest may not be that merely of a zoning board seeking to protect its own decision, but rather that of the elected governing body responsible for implementing the court's decision. The appellant, in other words, may not

really be "an administrative agency acting in a quasi-judicial capacity."

There is no practical way to look into the collective and corporate mind of the Board, to determine factually which hat it is wearing in any given case. Nor is it necessary to do so. We think that, as the responsible governing body of the county, the Board is entitled to the same right as its counterpart in a chartered county, even if that might, in some instances, transgress slightly upon the *McKinney* rule.

■ For these reasons, we conclude that the Board of County Commissioners was properly regarded as a party in the circuit court and that it has the authority to bring and prosecute this appeal.

### (2) *The Court's Judgment*

Turning now to the substantive issue before us, we start with two clear propositions: (1) the evidence before the Board established a change in the neighborhood sufficient not only to justify, but actually to "compel" the reclassification; and (2) because the restrictive condition was attached to the reclassification without an opportunity for public comment, it is defective and therefore void. Both of those propositions have been conceded by the Board—the first in its answer in the circuit court and the second in its brief before us—and we therefore need give no further consideration to them.

■ The circuit court, as we observed, did not rule upon Holtz's principal contention that the Board had no substantive authority to impose the restrictive conditions. It should have done so, for the correctness of its ultimate disposition depends on the answer to that issue.

Md.Code Ann. art. 66B, § 4.01(b) authorizes the Board, upon the rezoning of any land, to "impose such additional restrictions, conditions, or limitations as may be deemed appropriate to preserve, improve, or protect the general character and design of the lands and improvements being

zoned or rezoned, or of the surrounding or adjacent lands and improvements." That authority is repeated in § 27.4 of the county zoning ordinance. It must, however, be read in conjunction with other sections of art. 66B, including § 4.02, which permits the Board to divide the county into distinct zoning districts and within such districts to "regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land" but requires that "[a]ll such regulations shall be uniform for each class or kind of development throughout each district...."

If § 4.01(b), properly construed, authorizes the Board, substantively, to impose the type of use restrictions set forth in its Resolution—*i.e.,* to limit Holtz to only four of the seven categories of use permitted in the business, local zone—then there can be little question but that the court erred in excising those restrictions by judicial surgery. If authorized in the first instance, the question of whether and under what circumstances the restrictions should be imposed is a quasi-legislative matter for the Board, not the court, to determine. Having found only a procedural deficiency, the proper course would have been to remand the case so that the Board could conduct a new hearing on the need for and advisability of the particular restrictions and make a proper and documented decision with respect to them.

On the other hand, if Holtz is correct in its assertion that the Board lacked the substantive authority to impose use restrictions as a condition to the reclassification—if § 4.01, properly construed, does *not* permit conditions of that type—the ultimate judgment of the court would be correct. Under that circumstance, given the Board's concession as to the change in the neighborhood, there would be nothing to remand.

The issue is an important one, and yet neither party has paid much attention to it in its brief. We therefore think that it would be inappropriate for us to address the merits

of it in this appeal. Md.Rule 1085. Rather, we believe the best course would be to remand the case under Md.Rule 1071a, so that the circuit court can consider and resolve the pivotal substantive issue and then reconsider its disposition of the case in light thereof.

CASE REMANDED TO CIRCUIT COURT FOR WASHINGTON COUNTY, WITHOUT AFFIRMANCE OR REVERSAL, FOR FURTHER PROCEEDING, PURSUANT TO MD.RULE 1071a; APPELLANT TO PAY THE COSTS.