501 A.2d 489

**BOARD OF COUNTY COMMISSIONERS OF
WASHINGTON COUNTY, Maryland**

v.

**H. MANNY HOLTZ, INC.**

**No. 450, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 13, 1985.

William McC. Schildt and David K. Poole, Jr., Hagerstown, for appellant.

John H. Urner (Urner, McGrory, Nairn, Barton & Schaefer on the brief), Hagerstown, for appellee.

Argued before WEANT, BISHOP and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

The Board of County Commissioners of Washington County rezoned a tract of land but conditioned the rezoning by limiting the uses that could be made of that land. The circuit court of that county ruled that the Board could not impose such limitations. We agree.

H. Manny Holtz, Inc., applied to the Board of County Commissioners to reclassify a tract of land from Residential-Urban to Business-Local. Holtz posited that a re-

zoning was appropriate, citing several business uses, which it characterized as non-conforming uses, and an increase in vehicular traffic in the area. The company requested the rezoning so that it could operate a convenience store on the property.

The Commissioners received evidence relating to changes in the neighborhood. Two owners of tracts located near the Holtz parcel opposed the rezoning. During the hearing, the Commissioners suggested the possibility of some form of conditional zoning limiting the permitted uses of the property. All five Commissioners voted to rezone on the basis of a change in the neighborhood. A three person majority of the five Commissioners rezoned the property as Business-Local and imposed conditions that limited the uses of the property to four of the eight uses authorized under the zoning ordinance, none of which would allow for a convenience store as Holtz desired.[1] The remaining two Commissioners voted against the rezoning explaining that they would have approved the rezoning without the conditions. The record is silent as to whether any of the three Commissioners who voted to impose the conditions would have allowed a rezoning without conditions.

Holtz appealed to the Circuit Court for Washington County. The court found that the rezoning was proper, but that the conditions imposed were not because the Board had not provided an opportunity for interested parties to comment on the conditional use rezoning. Accordingly, the court

---

**1.** Article 11, Section 11.1 of the Zoning Ordinance of Washington County provides: Principal Permitted Uses—(a) local retail or service shops ...; (b) commercial parking lots; (c) funeral establishments; (d) offices and clinics, professional and business; (e) retirement, nursing and boarding homes; (f) schools, art, trade, business or nursery; (g) social clubs, fraternal organizations, community meeting halls; (h) drive-in restaurants. Under (a), the ordinance specifies thirty-seven different types of permitted shops. The uses approved in the case at bar were: funeral establishments; offices and clinics; retirement, nursing and boarding homes; and schools (art, trade, business or nursery).

affirmed the rezoning of the property to Business-Local but removed the conditions.

The Commissioners appealed to this Court. *Board of County Comm'rs. v. H. Manny Holtz, Inc.*, 60 Md.App. 133, 481 A.2d 513 (1984). In this Court's opinion, we observed that the trial court did not rule upon the contention that the Board had no substantive authority to impose the limiting conditions. We ordered the case remanded and directed the court to rule on this "pivotal substantive issue and then reconsider its disposition of the case in light thereof." *Id.* at 147, 481 A.2d 513. We set the basis for this inquiry:

"Md.Code Ann. art. 66B, § 4.01(b) authorizes the Board, upon the rezoning of any land, to 'impose such additional restrictions, conditions, or limitations as may be deemed appropriate to preserve, improve, or protect the general character and design of the lands and improvements being zoned or rezoned, or of the surrounding or adjacent lands and improvements.' That authority is repeated in § 27.4 of the county zoning ordinance. It must, however, be read in conjunction with other sections of art. 66B, including § 4.02, which permits the Board to divide the county into distinct zoning districts and within such districts to 'regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land' but requires that '[a]ll such regulations shall be uniform for each class or kind of development throughout each district....'

"If § 4.01(b), properly construed, authorizes the Board, substantively, to impose the type of use restrictions set forth in its Resolution—*i.e.*, to limit Holtz to only four of the [eight] categories of use permitted in the business, local zone—then there can be little question but that the court erred in excising those restrictions by judicial surgery. If authorized in the first instance, the question of whether and under what circumstances the restrictions should be imposed is a quasi-legislative matter for the Board, not the court, to determine. Having found only a

procedural deficiency, the proper course would have been to remand the case so that the Board could conduct a new hearing on the need for and advisability of the particular restrictions and make a proper and documented decision with respect to them.

"On the other hand, if Holtz is correct in its assertion that the Board lacked the substantive authority to impose use restrictions as a condition to the reclassification—if § 4.01, properly construed, does *not* permit conditions of that type—the ultimate judgment of the court would be correct. Under that circumstance, given the Board's concession as to the change in the neighborhood, there would be nothing to remand."

*Id.* at 145–46, 481 A.2d 513.

On remand, the circuit court concluded that the Commissioners did not have the authority to impose use restrictions as a condition to the reclassification. It affirmed the rezoning absent the conditions. The Commissioners disagree with that ruling and appeal on these issues:

"1. Did the Board of County Commissioners of Washington County have the substantive authority to impose use restrictions as a condition to the reclassification of Appellee's land?

"2. If the Board of County Commissioners of Washington County did not have such substantive authority, did the Circuit Court err in affirming in part and reversing in part the legislative decision of the Board to rezone?"

## AUTHORITY TO IMPOSE USE RESTRICTIONS
### -Conditional Zoning-

[1] Conditional zoning is a zoning reclassification subject to conditions not generally applicable to land similarly zoned. "[W]hen an area of land is rezoned from one classification to another, and such change is not outright but subject to some type of conditions, then we are confronted with a conditional zoning problem." Miller, *The*

*Current Status of Conditional Zoning,* Institute on Planning, Zoning, & Eminent Domain 122 (1974).

### -Article 66B § 4.01(a), (b)-

Appellant contends that Md.Code Ann., Art. 66B § 4.01(b) (1957, 1983 Repl.Vol.) contains an express grant of conditional zoning power.[2] It argues that § 4.01(b) was not a part of the original statutory scheme of zoning authority enacted by the General Assembly but was added to Art. 66B in 1970. Appellant continues that this section was derived from earlier statutes that had granted conditional zoning power to individual counties, and those earlier statutes were repealed in the same statute that enacted Section 4.01(b). Appellant concludes, therefore, that "[t]he repeal of the authority of several counties individually to impose conditions simultaneously with the enactment of § 4.01(b), which applies to all non-charter counties, strongly supports the contention that § 4.01(b) was intended to authorize conditional zoning."

Art. 66B § 4.01, *supra,* grants to local legislative bodies the general authority to (re)zone land:

"(a) For the purpose of promoting health, safety, morals, or the general welfare of the community the legislative body of counties and municipal corporations are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, off-street parking, the size of yards, courts and other open spaces, the density of population and the location and use of build-

---

**2.** Art. 66B applies generally to the counties and municipal corporations of the State, with the exception of chartered counties and some provisions not applicable to Baltimore City. Md.Code Ann., Art. 66B §§ 2.01, 3.01, 7.03 (1957, 1983 Repl.Vol.) It has been held that where a specific grant of authority to zone conditionally is granted, such an action is permitted. *Cf. Prince George's County v. Maryland-National Capital Park & Planning Comm'n,* 269 Md. 202, 306 A.2d 223 (1973), *cert. denied,* 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

ings, signs, structures and land for trade, industry, residence or other purposes."

In construing this and other sections of the zoning article, we are mindful of a cardinal rule of statutory construction which requires that a statute be construed according to the plain and ordinary import of its language. *Insurance Comm'r. v. Metropolitan Life Insurance Co.*, 296 Md. 334, 339, 463 A.2d 793 (1983). In conferring the power to zone to the counties, § 4.01(a) ostensibly grants to them the power to promote the welfare of the community by restricting the height, size and number of stories of buildings and other open spaces. Subsection (a) also expressly permits the regulation of and restriction on the use of land to promote the general welfare. Thus, this subsection allows for two kinds of restrictions—physical limitations and use restrictions.

Section 4.01(b) was enacted after 4.01(a) had been in operation for several years. This later section grants the specific authority to impose additional "restrictions, conditions or limitations." It provides:

"The local legislative body of a county or municipal corporation, upon the zoning or rezoning of any land or lands pursuant to the provisions of this article, may impose such *additional restrictions, conditions, or limitations* as may be deemed appropriate to preserve, improve, or protect the general character and design of the lands and improvements being zoned or rezoned, or of the surrounding or adjacent lands and improvements, and may, upon the zoning or rezoning of any land or lands, retain or reserve the power and authority to approve or disapprove the design of buildings, construction, landscaping, or other improvements, alterations, and changes made or to be made on the subject land or lands to assure conformity with the intent and purpose of this article and of the jurisdiction's zoning ordinance. The powers provided in subsection (b) of this section shall be applicable only if the local legislative body adopts an ordinance

which shall include enforcement procedures and requirements for adequate notice of public hearings and conditions sought to be imposed." (emphasis supplied).

Section 4.01(b) permits local legislative bodies to impose "additional restrictions, conditions or limitations" on the design and construction of buildings and landscaping on the subject or adjacent tract. The plain meaning of this subsection is clear. The language referring to "restrictions, conditions, and limitations" applies only to the structural and architectural character of the land and the improvements thereon. "Conditions, restrictions or limitations" on use are neither explicitly provided for in this subsection nor can they be implied therefrom.

Further, the two-fold purpose of § 4.01(b) is clear. First, the power to impose additional restrictions, limitations or conditions is granted to assure design conformity within the subject area. This section allows for the imposition of additional physical limitations not expressly provided for in subsection (a), if those additional structural or architectual limitations are necessary to achieve such conformity.

■ The second purpose behind subsection (b) is indicated by the addition of the second sentence to this section. This provision sets out the procedure municipal bodies must comply with before rezoning with conditions. The ordinances adopted must include both enforcement procedures and notice requirements. We conclude this means that to satisfy the § 4.01(b) proviso, the legislative body will determine the conditions it wishes to attach to any zoning or rezoning only after a public hearing.

■ Our reading of § 4.01(a) and (b) leads us to conclude that it does not authorize conditional use rezoning. This is further bolstered by the requirements of § 4.02.

### -Art. 66B, § 4.02 and Uniformity-

Section 4.02 specifies that

"the local legislative body may divide the county or municipal corporation into districts of such number,

shape, and area as may be deemed best suited to execute the purposes of this article, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of development throughout each district, but the regulations in one district may differ from those in other districts."

■ Section 4.02 requires uniformity within the class or development in a district. Hence, it necessarily prohibits conditional use zoning. The allowance of conditional use rezoning posed by appellant flies directly in the face of this section and the mandated uniformity.

■ Section 4.02 must be construed in relation to § 4.01. Under the broad grant of power to (re)zone conferred under § 4.01(a), the local legislative body is permitted under § 4.02 to divide the county into divisible components, provided there is uniformity within those districts. The regulations and restrictions that must be uniform include the use of buildings and land. Hence, where, as here, the legislative body has predetermined the acceptable categories of uses in a given district, to conditionally restrict some of those uses violates the mandate of § 4.02. If we were to authorize the Board of County Commissioners through rezoning to limit or restrict the permitted uses of certain tracts within a zone, the Board would have the power to destroy the uniformity of that district.[3] As the trial judge opined

> "[e]ach time that a rezoning application would be granted with one or more use restrictions, a unique mini-district would be created which would be inconsistent with the

---

3. Further, the Board of County Commissioners acting in its quasi-legislative capacity has already established that the designated principal permitted uses in the Business-Local determination are compatible with one another within a district. Once that is established, the exclusion of any one or more uses by the County Commissioners functioning in its quasi-judicial capacity is a usurpation of the legislative function. *Cf. Board of County Comm'rs. v. H. Manny Holtz, Inc.,* 60 Md.App. 133, 481 A.2d 513 (1984).

comprehensive uniform plan for the district. The piece-meal proliferations of these mini-districts would totally emasculate the uniformity requirement of the zoning ordinance. To authorize rezoning under such use conditions as the Board of County Commissioners may chose or impose, without adhering to the comprehensive plan for property in any given district, would be whimsical and capricious...."

We concur.

Moreover, even though Art. 66B prohibits conditional use zoning, that does not preclude a county desirous of utilizing this device from doing so. Art. 66B applies only to non-charter counties. A county desiring to conditionally zone could go through the necessary procedures to secure a charter, and in that charter expressly grant the authority to rezone with use restrictions. Washington County has not done this. In fact, Art. 2, § 2.1 of the Zoning Ordinance of Washington County embodies the principle that zoning regulations are to be uniform.

### -Non Uniform Devices-

Appellant argues that certain other zoning devices, such as special exceptions, variances and nonconforming uses, permit deviations from uniformity. It asserts that "[w]hile uniformity is a major goal of Maryland zoning laws, it is not the highest goal. The ultimate purpose of zoning laws is to protect and promote the public health, safety, morals, and general welfare ... To this end, uniformity of regulation for each zoning district is not always required." (citation omitted)

■ The devices of variances, special exceptions and the like are permitted deviations from uniformity. Abrams, *Guide to Maryland Zoning Decisions* § 11.1 (2d ed. 1984). They are expressly authorized imperfections in the zoning scheme, generally restricted in nature. *Id.* Conditional use zoning is something quite different.

As we have held, conditional use zoning is not expressly authorized. Further, it may not necessarily be restricted in

nature. If taken to its extreme, conditional use zoning could result in a patchwork-zoned district. Moreover, special exceptions are not rezoning, *Martin Marietta Aggregates v. Citizens*, 41 Md.App. 26, 395 A.2d 179 (1978), nor are variances. *McLean v. Soley*, 270 Md. 208, 310 A.2d 783 (1973). They are grants of special uses permitted under the provisions of existing zoning laws; reclassification is a change in the existing law itself with respect to the subject property. Abrams, *Guide to Maryland Zoning Decisions*, *supra* at §§ 11.2, 11.3. While a nonconforming use sets the use to which property may be put, it differs fundamentally from conditional use zoning. A non-conforming use permits an individual to continue to use property in the same manner as he has previously, despite its apparent illegality, due to a change in the zoning laws. *Id.* at § 11.4. Conditional use zoning, in contrast, restricts the use to which property may be put despite the legality of that use. Finally, the goal of uniformity, while not the major goal of zoning, has values inherent in it that are consistent with the protection and promotion of the general welfare.

### -Desirability of Conditional Zoning-

Appellant points out that while the Court stated in *Montgomery County v. National Capital Realty Corp.*, 267 Md. 364, 297 A.2d 675 (1972), that "[t]he invalidity of conditional zoning in Maryland is not seriously open to question," it added that "the rule followed in Maryland has undergone erosion in some states...." *Id.* at 373–74, 297 A.2d 675.

The Board urges that Maryland follow this trend, asserting that conditional zoning is desirable because it mitigates against the harshness of commercial or industrial rezoning on neighboring residential property. Many authorities in the zoning field have written about the benefits of conditional zoning. It has been argued that it can ameliorate the impact on downzoned land by permitting uses which would have less impact on surrounding tracts. In addition, conditional zoning has been applauded as providing local government with the flexibility to grant specific reclassification requests while preserving the integrity of the property

surrounding the rezoned tract. 2 Rathkopf, *The Law of Zoning and Planning* § 27.05 at 44–45. (4th ed. 1984). Furthermore, "[p]roperly used, [conditional use zoning] 'provides a source of flexibility by allowing an intermediate use permit, between absolute denial and complete approval of the [rezoning application].' This would seem consistent with goals of a well thought out land-control program." *Miller, supra* at 145, quoting *Chrobuck v. Snohomish Co.,* 78 Wash.2d 858, 480 P.2d 489, 507 (1971). While we do acknowledge that certain text writers and various states have been attracted to conditional rezoning as a valuable planning tool, we are not inclined to construe the statute to provide for conditional use zoning in Maryland.

We note, however, that the desired flexibility offered by conditional use rezoning can be secured by methods other than the harsh method of use restriction. In some instances it can be secured through limiting physical, structural or architectural conditions other than use, such as size, height, etc. These types of conditions are not precluded by §§ 4.01 or 4.02. In other instances, this balance can be achieved through the use of the floating zone as opposed to the Euclidean zone.[4]

In the case at bar, both the Board and Holtz had other means available to secure their respective goals. Holtz could have applied for a special exception or variance. The Board, instead of conditionally zoning through use restrictions, could have either denied the rezoning application or denied it with the suggestion that Holtz seek another avenue to achieve its desired goal.

Hence, the favorable aspects of conditional zoning can be secured by other means without the imposition of use conditions on rezoning which destroy the legislative require-

---

4. Euclidean zones are determined by the zoning authority. Floating zones have no such defined boundaries and are said to "float" over the entire area or district where they may eventually be established. *Bigenho v. Montgomery County Council,* 248 Md. 386, 391, 237 A.2d 53 (1968).

ment of uniformity or which may destroy the municipalities' authority, under the police power, to provide for the welfare of the residents.

## REMAND TO THE BOARD

■ Appellant urges that once the circuit court ruled that the Board could not impose use restrictions, the court should have remanded the matter to the Board to allow it to determine if it would rezone without limitations. Given the Board's concession that there was a change in the neighborhood, we are bound by the decision in *Board of County Comm'rs. v. H. Manny Holtz, Inc., supra.* In that case we ruled that if use restrictions are not permitted under § 4.01(b), the circuit court's ultimate judgment would be correct. No appeal was taken from that decision. Thus, the prior ruling became the law of the case, *Loveday v. State,* 296 Md. 226, 462 A.2d 58 (1983); *Ralkey v. Minnesota Mining and Mfg. Co.,* 63 Md.App. 515, 492 A.2d 1358 (1985), and we cannot direct its remand to the Board.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.