## CIRCUIT COURT OF LOUDOUN COUNTY

Luck Stone Corp.

v.

Loudoun County

August 25, 1993

Case No (Law) 14105

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the application of Luck Stone Corporation ("Luck") pursuant to Section 58.1–3984 to correct an allegedly erroneous assessment of roll-back taxes by the County of Loudoun on approximately 150 acres owned by Luck. Although several issues are presented in this case, the primary issue is whether the granting of a special exception is a change in zoning which causes the land no longer to be eligible for the land use program under Section 58.1–3237 and 58.1–3237.1.

The Court heard evidence on August 10, 1993. All arguments and memoranda of counsel have been considered.

For the reasons hereinafter set forth, I am of the opinion that the granting of a special exception is not a change in zoning. Further, the Court finds that there has been no change in the use of the property from the prior years when the County determined that the property was eligible for the land use program. The relief requested in the application is, therefore, granted.

### Facts

In 1989 Luck acquired the property in question. It is adjacent to Luck's existing quarry. Prior to its acquisition, at the time of its acquisition and from its acquisition to the date of the hearing the land has

been used by Marvin Donohoe to graze cattle. At least as far back as 1987 the land has been in the land use program established by ordinance of the County because of agricultural (cattle grazing) and forestal use (approximately 30 to acres is wooded). Cattle have grazed over all the approximately 150 acres. There has been no change or discontinuance of such use. The land has been in the land use program for more than five years. From the time of its acquisition by Luck in 1989 to the present, the land has always been zoned A-3, an agricultural-residential zoning category under the Loudoun County Zoning Ordinance.

After Luck acquired the land, it applied to rezone the land from A-3 to I-1, an industrial zoning category, in August 1989. It paid an application fee of $10,695.00. The purpose of the rezoning application was to permit future expansion of the quarry on this land. The I-1 zoning would allow such a use by right. During the review process individuals in the County Department of Planning, Zoning and Community Development did not support the rezoning request and suggested to Luck to seek a special exception from the Board of Supervisors to permit the extraction of natural resources in an A-3 zone as permitted by the zoning ordinance.

Luck withdrew the rezoning application, the County refunded the rezoning fee, and Luck, on April 4, 1990, filed an application for a special exception to permit extraction of natural resources within an A-3 zone and paid an application fee of $4,388.00.

The Board of Supervisors granted the special exception on March 11, 1991, subject to 37 conditions. Luck has not expanded its quarry into this land. It has done nothing in furtherance of the special exception. None of the conditions have been met. As stated above, the use of the land has not changed since Luck acquired it in 1989.

In 1992 the County determined that the land covered by the special exception was not eligible for the land use program because of the granting of the special exception and has assessed roll-back taxes, penalty and interest for the years 1987, 1988, 1989, 1990, 1991, 1992 and the first half of 1993. Luck has paid a portion of the assessed taxes under protest. The County claims unpaid taxes, penalty and interest of over $140,000.00 through August 31, 1993.

The Court is aware that roll-back taxes are not assessed on all the land for all the foregoing years and that the land included in the special exception did not include all of the 150 acres or all of the land in-

cluded in the rezoning application, but such distinctions are not necessary for the decision herein.

## Conclusions of Law

Although counsel were not exactly specific as to what state statute or county ordinance formed the basis of the County's decision to assess roll-back taxes, it is apparent that the County's purported authority comes from either Section 58.1–3237 or Section 58.1–3237.1 or both. The statutes are similar, and basically provide that if real estate in the land use program is "rezoned" or there is a "change in zoning" thereof to a more intense use at the request of the owner, then roll-back taxes attach.

The County may argue that special exceptions are a part of the zoning process, that the Supreme Court uses zoning law standards in reviewing special exception cases or that Luck's pursuit of the special exception violates the stated goals of the land use program, but I am of the opinion that this case is simply one of construing the statute or statutes which the County asserts as authority for imposing roll-back taxes because of the granting of the special exception.

Section 58.1–3237(A) provides, in pertinent part:

> When real estate qualifies for assessment and taxation on the basis of use under an ordinance adopted pursuant to this article, and the use by which it qualified changes to a nonqualifying use, or *the zoning of the real estate is changed to a more intensive use at the request of the owner* or his agent, it shall be subject to additional taxes, hereinafter referred to as roll-back taxes.

(Emphasis supplied.)

The County asserted (and Luck did not argue otherwise) that Section 58.1–3237.1 applies to Loudoun County. Section 58.1–3237.1(2) provides, in pertinent part:

> The governing body may provide that when *the zoning of the property taxed under the provisions of this article is changed to allow a more intensive nonagricultural use at the request of the owner* or his agent, such property shall not be eligible for assessment and taxation under this article.

(Emphasis supplied.)

As can be seen from the statutes, the event that triggers the roll-back taxes is a "change" in "zoning." The statutes do not provide that the granting of a special exception triggers roll-back taxes. Therefore, the County is not permitted to assess roll-back taxes unless the granting of a special exception constitutes a change in zoning.

In construing a statute the Court must ascertain and give effect to the intention of the legislature. The intention is determined from the words used in the statute. *Watkins* v. *Hall*, 161 Va. 924, 930 (1934).

"Zoning" is defined in Section 15.1–430(k):

> "Zoning" or "to zone" means the process of classifying land within a governmental entity into areas and districts, such areas and districts being generally referred to as "zones," by legislative action and the prescribing and application in each area and district of regulations concerning building and structure designs, building and structure placement and uses to which land, buildings and structures within such designated areas and districts may by put.

"Special exception" is defined in Section 15.1–430(i):

> "Special exception" means a special use, that is a use not permitted in a particular district except by a special use permit granted under the provisions of this chapter and any zoning ordinances adopted herewith.

By the statute zoning is the process of classifying land into zones and the prescribing and application in each zone of regulations concerning building and structure designs and placement and the uses to which the land, buildings and structures may be put. By statute a special exception is a special use, i.e. a use permitted only by a special use permit. It is a use "to which land . . . may be put" under the zoning ordinance. The County prescribed this use when it adopted the zoning ordinance. Put another way, the adoption of a zoning ordinance is the means to accomplish the process defined in Section 15.1–430(k) as "zoning;" and the process prescribed the special use permitted by special use permit defined in Section 15.1–430(i) as a "special exception."

The authority cited by Luck from other jurisdictions, e.g. *Stoddard* v. *Edelman*, 4 Cal. App. 3d 544 (1970); *Board of County Commissioners of Washington County* v. *H. Manny Holtz, Inc.*, 65 Md. App. 574 (1985), hold, in my opinion, correctly that a special exception is not a

"rezoning." There can be no logical argument that "rezoning" and "change in zoning" are not synonymous.

At 83 Am. Jur. 2d, *Zoning and Planning*, Section 962, it is stated as follows:

> *The grant of a special use permit through an ordinance is not an amendment of the general zoning ordinance.* Rezoning contemplates the amendment of an existing zoning ordinance which changes the zoning classification of a previously zoned area. On the other hand, while the granting of an unclassified use permit may authorize a change in land use, *the issuance of a special permit contemplates an exception granted pursuant to a previously existing zoning ordinance,* subject to certain guides and standards laid down therein.

(Emphasis supplied.)

Under Section 15.1–486 the zoning of property is accomplished when the governing body by ordinance classifies territory within its jurisdiction. Similarly, under Section 15.1–491(g) a rezoning or change in zoning occurs when the governing body by ordinance amends the property's zoning classification. *Laird* v. *City of Danville,* 225 Va. 256, 261 (1983). The County did not amend the property's zoning classification by ordinance when the special exception was granted. The text of the zoning ordinance has remained the same. There has been no amendment to the zoning ordinance. Hence, there has been no change in zoning.

Not only are "zoning" and "special exception" different under the statutory definitions, but also there are differences found in both state and local law. The County treats applications for rezoning different from applications for a special exception in the area of the fee charged the applicant. The Board of Supervisors can impose conditions on a special exception (for example, the 37 conditions placed on Luck's special exception), but it cannot on a rezoning (only the applicant can proffer conditions). Specifically, in this case the Board of Supervisors placed a sixty year time limit on the special exception, but it could not have placed a time limit on a rezoning. Only the Board of Supervisors can rezone land, but the authority to issue special exceptions can be delegated to another entity; e.g. Board of Zoning Appeals.

This Court approached the statutes in this case in the same manner as the Supreme Court approached Section 58.1–3237 (as it then ex-

isted) in *City of Virginia Beach* v. *ESG Enterprises,* 243 Va. 149 (1992). The statutes are clear and unambiguous. They refer to changes in zoning. They do not refer to the granting of a special exception. If the legislature had intended to include the granting of a special exception as a mechanism to trigger roll-back taxes, then it could easily have included it in the statutes.

There is no need to address the issue of whether extraction of natural resources is complementary to the agricultural use of the land under Section 848.045 of the County ordinances because the zoning of the land has not changed. Hence, the complementary use issue never comes into play.

The County's argument that the roll-back taxes should be imposed because Luck's obtaining of the special exception violates the primary purpose of the land use program to preserve land used for agricultural, horticultural, forest and open space (see Section 58.1–3229) is not persuasive. First, there is no statute that allows the assessment of roll-back taxes if a landowner does something that violates the primary purpose of the land use program. Secondly, until the recent amendments to the statutes to provide that a change in zoning can trigger roll-back taxes, only a change to a non-qualifying use would trigger roll-back taxes. Presumably, this is exactly the point made by the Supreme Court in the *Virginia Beach* case which led to the 1992 amendments to the statutes. Thirdly, the taxation of land on a land use assessment is based on the use to which the land is actually being put, and not the use to which it might legally be put in the future, except in the case of a change in zoning. The legislature decided to allow a tax break based on the lower land use assessment based in turn on the actual use of the land as the means to encourage preservation of land for the four purposes. If the legislature had wanted to base land use programs upon the potential uses of a parcel of real estate, then it could have done so, but it decided not to do so.